### UNITED STATES v. SHIPLEY.

(Circuit Court of Appeals, Third Circuit. June 12, 1912.)

#### No. 1 (1,507).

1. INTERNAL REVENUE (§ 38*)—LEGACY TAX—ACTION FOR REFUND.
   Act June 27, 1902, c. 1160, § 3, 32 Stat. 406 (U. S. Comp. St. Supp. 1911, p. 983), in authorizing and directing the Secretary of the Treasury, on proper application to the Commissioner of Internal Revenue, under such rules and regulations as may be prescribed, to refund so much of any legacy tax as may have been collected under the war revenue act of 1898 (Act June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2286]) on contingent beneficial interests which shall not have become vested prior to July 1, 1902, does not confer on the Secretary exclusive jurisdiction to determine who are entitled to its benefits; but the duty imposed on him is ministerial, and on his refusal of an application made thereunder the applicant may maintain an action against the United

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

States, under Tucker Act March 3, 1887, c. 359, 24 Stat. 505 (U. S. Comp. St. 1901, p. 752), to enforce the right to a refund given him by the act.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. § 38.*]

2. INTERNAL REVENUE (§ 38*)—LEGACY TAXES—REFUNDMENT STATUTE.

Refunding Act June 27, 1902, c. 1160, § 3, 32 Stat. 406 (U. S. Comp. St. Supp. 1911, p. 983), directing the refunding of legacy taxes paid on contingent interests which did not become vested prior to July 1, 1902, is not a part of the general system of internal revenue laws, but a distinct and special enactment for the benefit of a designated class of persons; and Rev. Stat. § 3228 (U. S. Comp. St. 1901, p. 2089), limiting the time for presentation of claims for the recovery of internal revenue taxes erroneously or illegally collected to two years, has no application to claims for refund under such act.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. § 38.*

Internal revenue tax on legacies, inheritances, and transfers, see note to Ward v. Sage, 108 C. C. A. 417.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

Action by Walter Penn Shipley, surviving executor of the estate of Thomas P. Cope, deceased, against the United States. Judgment for plaintiff, and the United States brings error. Affirmed.

J. Y. Brinton, Asst. U. S. Atty., of Philadelphia, Pa., and J. Whitaker Thompson, U. S. Atty., for the United States.

Edward W. Evans, of Philadelphia, Pa., and Walter Penn Shipley, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. This is an appeal from the decision of the United States District Court for the Eastern District of Pennsylvania, in favor of the defendant in error, the plaintiff below, in a suit for the refunding of taxes under the provisions of section 3, Act June 27, 1902 (32 Stat. 406), directing the Secretary of the Treasury to refund taxes paid on contingent beneficial interests not vested prior to July 1, 1902.

The plaintiff below is the surviving executor of the will of Thomas P. Cope, of Philadelphia, who died October 22, 1900. By his will, the testator bequeathed to his widow an annuity during her life, together with all his real estate for her life, and gave the remainder of his estate to his children, in equal shares, two of these shares being given in trust. The income from the personal estate was insufficient to pay the annuity, and a portion of the principal was required each year for that purpose. Under the War Revenue Act of June 13, 1898, imposing a tax upon legacies, the Internal Revenue Department, on October 10, 1901, claimed and collected from the plaintiff a tax upon the shares of the testator's children in his personal estate, the aggregate value of these shares being taken to be the value of the total personal estate, less the value of the widow's life interest. Section 3 of the act of June 27, 1902, above referred to, providing for the re-

funding of taxes paid on the interest not vested prior to July 1, 1902, is as follows:

"Sec. 3. That in all cases where an executor, administrator or trustee shall have paid, or shall hereafter pay any tax upon any legacy or distributive share of personal property under the provisions of the act approved June thirteenth, eighteen hundred and ninety-eight, entitled, 'An act to provide ways and means to meet war expenditures, and for other purposes,' and amendments thereof, the Secretary of the Treasury be, and he is hereby authorized and directed to refund out of any money in the Treasury not otherwise appropriated, upon proper application being made to the Commissioner of Internal Revenue, under such rules and regulations as may be prescribed, so much of said tax as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two. And no tax shall hereafter be assessed or imposed under said act approved June thirteenth, eighteen hundred and ninety-eight, upon or in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to said July first, nineteen hundred and two."

Under the provisions of this section, the plaintiff, on May 4, 1908, presented a claim to the Internal Revenue Department for a refund of this tax paid on the shares of the testator's children, but the claim was refused, except as to the sum of $63.23, assessed upon the capital of the two trust shares, on the ground that the executors had no authority under the will for retaining the entire personal estate during the life of the widow, to pay her annuity (the same having been so retained by order of the orphans' court of Philadelphia), but should have purchased an annuity, and that therefore the entire estate, over and above the personal effects bequeathed to the widow and the value of her annuity, should have been treated as divided among the six children, the shares of four of them vesting absolutely and the shares of two vesting as life estates.

Suit was accordingly brought in the court below by the plaintiff, on June 26, 1908, under the "Tucker" Act (authorizing such suits in the District Courts of the United States) for the refund of the taxes so paid and alleged to fall within the provisions of section 3 of the Refunding Act, as above recited. The demurrer by the government to the statement of claim was overruled by the court below and judgment thereon entered in favor of the plaintiff for the amount of tax claimed to be refunded. It is not contended by the counsel for the government that the taxes so collected were not properly within the classification of taxes required to be refunded by the said act, as being contingent beneficial interests which did not become vested prior to July 1, 1902, and the decision of the court below was not questioned upon its merits, but upon two propositions covered by the assignments of error:

(1) That section 3 of the said Refunding Act, upon which plaintiff's claim is based, confers upon the Secretary of the Treasury *exclusive* jurisdiction to determine who are entitled to its benefits, and that such determination is not reviewable in the court below or in this court.

(2) That any claim which the plaintiff may have had against the said defendant cannot now be maintained, for the reason that, as

appears from the plaintiff's statement of claim, the same was not presented to the Commissioner of Internal Revenue within two years next after the alleged cause of action accrued, as required under the provisions of Act June 6, 1872, c. 315, 17 Stat. 257, Rev. St. § 3228 (U. S. Comp. St. 1901, p. 2089).

[1] In support of the first proposition, it is argued by the counsel for the government that section 3 of the Refunding Act itself provides for the determination of all questions as to the right to claim a refund under its provisions, and that a discretionary or quasi judicial function is conferred upon the Secretary of the Treasury or the Treasury Department in that respect. The language of the Act relied upon is as follows:

"The Secretary of the Treasury be and he is hereby authorized and directed to refund * * * upon proper application being made to the Commissioner of Internal Revenue, under such rules and regulations as may be prescribed, so much of said tax as may have been collected on contingent beneficial interests which shall not have become vested prior to July 1st, 1902."

Undoubtedly this language confers upon the Secretary of the Treasury authority to prescribe such rules as may be necessary and proper to secure orderly procedure under the provisions of the act, but we cannot think that more than this was included in the legislative intent. The language of one or two cases relied upon by counsel for the government may seem to support their contention. Nevertheless, we think they may clearly be distinguished in principle from the case at bar. One of these cases—United States v. Black, 128 U. S. 40, 9 Sup. Ct. 12, 32 L. Ed. 354—was a case where it was held that the court below had no right, by mandamus, to compel the Commissioner of Pensions to reverse his decision disallowing an application for an increase of pension under certain statutes passed in regard to such increase, and issue the pension applied for. The court held that the act sought to be thus controlled was an executive act, involving executive discretion, and as such not to be controlled by the writ of mandamus. The court goes on to say, however, that if the decision of the Commissioner is overruled by the Secretary of the Interior, on the ground that the applicant comes under the meaning of the law granting the increase, the pensioner is entitled to a rule upon the Commissioner to show cause why a writ of mandamus should not issue to compel him to obey the decision of the Secretary. The interesting opinion of Mr. Justice Bradley in this case is confined to a discussion of the principle upon which mandamus will issue to compel the performance of a merely ministerial duty imposed by law, and the court's want of power to interfere with the action of an executive officer, where he is invested with discretion as to what that action should be, illustrating the distinction by stating that when such an officer refuses to act at all in the exercise of the discretion imposed on him by law, mandamus may issue to compel him to exercise such discretion. In the case before us, the duty imposed upon the Secretary of the Treasury by the Refunding Act is a direct and positive one to refund all taxes collected on certain interests which shall not have become vested prior to a certain date. The duty imposed upon

the Secretary is ministerial, and not executive or quasi judicial. Certain persons who paid such taxes as are designated in the act were vested with the right to have them refunded by the government. The act was an act of grace and bounty on the part of the government, while those entitled to it were entitled to it by law, and the Secretary of the Treasury, as custodian of the funds from which such bounty was to be paid, was not empowered by any discretion vested in him by law to refuse the same, or to diminish or impair its value.

Ferry v. United States, 85 Fed. 550, 29 C. C. A. 345, is another case cited by the plaintiff in error. Suit in that case was brought under Revised Statutes, § 2984 (U. S. Comp. St. 1901, p. 1958), authorizing the Secretary of the Treasury, upon the production of satisfactory proof to him of the actual injury or destruction of merchandise while in the custody of customs officers, etc., to abate or refund the amount of duties paid or accrued thereon. Judge Taft, in delivering the opinion of the Circuit Court of Appeals, said the section referred to—

"gave the Secretary of the Treasury authority to hear and determine claims for refunds coming within this section. * * * In the case at bar he [the Secretary] rendered his decision that, on the facts stated, the petitioner did not bring his case within the section, and that therefore the petition filed under the section must be rejected."

He further says:

"It is a well settled principle in federal jurisprudence that the government of the United States has the right to provide for the summary collection of its revenues and to restrict the duty payer to certain special tribunals and certain specific remedies for acts of injustice that may be done on behalf of the government under such a system."

Undoubtedly the court was right in this statement, for the law had expressly clothed the Secretary in regard to any claim under this act with power to hear and determine the same. No such express authority is given to the Secretary of the Treasury or the Treasury Department to hear and determine the case of an applicant under the provisions of the Refunding Act, and, as we have already said, we think there is no implication of such authority from the mere right to prescribe regulations as to the procedure for administering the act. Judge Taft, in the case from which we have just quoted, cites the decision of the Supreme Court in the case of Nicholl v. United States, 7 Wall. 122, 19 L. Ed. 125, in which it was held that, where importers had paid duties without protest, as required by the customs laws, they might not thereafter bring suit in a Court of Claims for a recovery of excess duties. The Supreme Court, in referring to the revenue customs laws, speaks of them as—

"a system under which the prompt collection of the revenue and its faithful application is one of the most vital duties of government."

The government depends upon this prompt collection of its ordinary revenue to meet, not only its current expenses, but to pay the interest on its debt, and it is of the utmost importance that it should be collected with dispatch, and that the officers of the treasury should be

enabled to make a reliable estimate of means, in order to meet such liabilities. For this purpose—

"Congress has from time to time passed laws on the subject of the revenue, which not only provide for the manner of its collection but also point out a way in which errors can be corrected. These laws constitute a system which Congress has provided for the benefit of those persons who complain of illegal assessments of taxes and illegal exactions of duty."

It seems to us manifest that the Refunding Law of 1902 is not part of this system, but was enacted to meet the case of a designated class who had paid taxes not intended to be collected from them under a former law and to whom Congress thought it fair and just that such taxes should be refunded, and directed the Secretary of the Treasury to refund the same upon proper application made in accordance with such appropriate rules as he should prescribe. These taxes were to be refunded, regardless of protest, which under the general system for revenue collection referred to by the Supreme Court in the case just cited, was necessary on every application to the customs officers for a refund. In accord with the view here taken is the decision of the Court of Claims in the case of Fidelity Trust Co. v. United States, 45 Ct. Cl. 363 (1910), in which it was held that the decision of the Secretary of the Treasury, upon the question of law whether the interests involved were contingent interests, not vested prior to July 1, 1902, was not final and conclusive, but that the Court of Claims had jurisdiction of the case. It was argued for the government, as here, that the third section of the act of 1902 confers upon the Secretary of the Treasury judicial functions in the determination of facts and the law applicable to the same, and that such determination is not subject to review by the courts. The court said, however:

"He [the Secretary] is only required to identify a certain class of persons, and when identified to pay them the sum to which under the law they are entitled. It may require some knowledge of the law to determine that fact, but none the less the ultimate determination is a fact. * * * In short, the act of June 27, 1902, is an appropriation to a certain class of persons to be paid by the Secretary of the Treasury when identified by him. * * * This claim rests solely upon the provision of the act of June 27, 1902, and we think is clearly within the jurisdiction of this court by the act of March 3, 1897."

In the case of Medbury v. United States, 173 U. S. 492, 19 Sup. Ct. 503, 43 L. Ed. 779, the Supreme Court held that the Secretary of the Interior was not created a special tribunal with exclusive jurisdiction by section 2 of the act of June 16, 1880, 21 Stat. 287, c. 244 (U. S. Comp. St. 1901, p. 1416). This section provides for the refunding in the case of homestead entries thereafter canceled, to the entrymen, the fees, commissions and amount of purchase money paid upon the same, "and in all cases where parties have paid double minimum price for land which has afterwards been found not to be within the limits of a railroad grant, the excess of $1.25 per acre shall in like manner be repaid to the purchaser thereof, or his heirs or assigns," by the Secretary of the Interior. An application having been made for a repayment under the portion of the section just quoted, the application was denied by the Secretary of the Interior. Suit was then brought in

the Court of Claims, upon an agreed statement of facts. The Court of Claims decided that it had no jurisdiction, on the ground that the decision of the Secretary was final and conclusive. On appeal, the Supreme Court reversed the decision and held that the Court of Claims had jurisdiction. It said, speaking through Mr. Justice Peckham:

"If there were any disputed questions of fact before the Secretary, his decision in regard to those matters would probably be conclusive, and would not be reviewed in any court. But where, as in this case, there is no disputed question of fact, and the decision turns exclusively upon the proper construction of the act of Congress, the decision of the Secretary refusing to make the payment is not final, and the Court of Claims has jurisdiction of such a case."

It is to be observed that in this case the Supreme Court was dealing with a special act providing for the payment of money to a particular and designated class of persons, and in the case before us the act of Congress with which we are concerned is of the same character.

By the Refunding Act, Congress has only created a special obligation on the part of the United States. In this respect, the act differs essentially from those constituting the revenue system referred to by the Supreme Court in Nicholl v. United States, supra. No provision for the enforcement of that obligation is included within its terms and no special remedy to be followed in case of violation of the obligation. In this respect, the language of Mr. Justice Peckham, in Medbury v. United States, supra, is applicable:

"In this case it is not a right and a remedy created by the same statute. The statute creates the right to have repayment under the facts therein stated, but it gives no remedy for a refusal on the part of the Secretary to comply with its provisions. The person has the right under the act to obtain a warrant from the Secretary of the Interior for the repayment of the excess therein mentioned, and for the purpose of obtaining it he must make his application and prove the facts which the statute provides, and then the Secretary is to draw his warrant on the Treasury. This constitutes the right of the appellant. Applying for the warrant is not a remedy. When application for repayment is made there is nothing to remedy. He has not been wronged. A right of repayment of money theretofore paid has been given by the act, but it is only under the act that the right exists, and that right is to have the Secretary in a proper case issue his warrant in payment of the claim, and until he refuses to do so, no wrong is done and no case for a remedy is presented. After the refusal, the question then arises as to the remedy, and you look in vain for any in the act itself. We cannot suppose that Congress intended in such case to make the decision of the Secretary final when it was made on undisputed facts. If not, then there is a remedy in the Court of Claims, for none is given in the act which creates the right. The procedure for obtaining the repayment as provided for in the act must be followed, and when the application is erroneously refused, the party wronged has his remedy, but that remedy is not furnished by the same statute which gives him the right."

[2] What we have just said in regard to the first proposition of the plaintiff in error, we think is largely determinative of the second proposition, viz.:

"That any claim which the plaintiff may have had against the said defendant cannot now be maintained, for the reason that, as appears from the plaintiff's statement of claim, the same was not presented to the Commis-

sioner of Internal Revenue within two years next after the alleged cause of action accrued, as required under the provisions of Act June 6, 1872, c. 315 (Rev. Stat. § 3228)."

The Refunding Act admittedly contains, neither expressly nor by implication, any limitation of time within which application must be made to the Secretary of the Treasury or any office of the Treasury Department. On the theory, however, that the Refundng Act is part of the revenue system to which reference has been made, it is contended that the period of limitation prescribed in section 3228 of the Revised Statutes is enforceable as to applications made under the Refunding Act in question. That section reads as follows:

"All claims for the refunding of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, must be presented to the Commissioner of Internal Revenue within two years next after the cause of action accrued."

This section is part of the revenue system above referred to, and as such, for the reasons stated above, can have no application to the special Refunding Act of June 27, 1902. Nor does the general language of that act, by which the Secretary of the Treasury is authorized to make the refund upon "proper application being made to the Commissioner of Internal Revenue, under such rules and regulations as may be prescribed," authorize the Secretary or the Revenue Commissioner to apply, by way of regulation, the period of limitation prescribed in section 3228 of the Revised Statutes. Nevertheless, the contention of the government is, that, inasmuch as the acting Commissioner, by way of prescribing regulations for the making of such applications under the Refunding Act, has among other things prescribed as follows:

"Such claims will be considered and disposed of as claims for refunding under section 3220, Revised Statutes, are now disposed of,"

—not only section 3220, but the collocated sections 3226, 3227, and 3228 form one co-ordinate and consistent scheme of limitation for applications and suits under the internal revenue laws, and are therefore applicable in the present case. It hardly needs argument to support the statement that if the limitation prescribed in section 3228 does not, proprio vigore, apply to claims made under the special Refunding Act of June 27, 1902, it is entirely beyond the power of the Secretary of the Treasury or the Commissioner of Internal Revenue to prescribe such a limitation. To hold otherwise would bring us to the absurd conclusion that the Secretary, in the guise of a regulation, could curtail or diminish the right which Congress, by lawful enactment, had conferred upon a designated class of persons. If he could by any regulation have adopted the two years period of section 3228, he could likewise have prescribed any longer or shorter period. It follows, then, that if the period of limitation ordained in section 3228 applies to this act, it is because it applies to any and all acts, special or otherwise, by which for any reason Congress directs money to be refunded or paid to a particular class of persons.

We have already stated reasons for our conclusion that this Refunding Act is quite independent of the general system of revenue laws, of which the sections of the Revised Statutes above referred to are a part. Section 3228 applies, as contended for by the defendant in error, only to claims based on applications arising out of errors or illegalities in the assessment or collection of such taxes as are provided for and imposed under the general system of the revenue laws, of which said section is a part. But the Refunding Act is not part of the revenue system, but a distinct and special enactment in no wise concerning the levying or collecting of the tax, but creating an obligation to pay money to certain claimants.

In the case of Fidelity Company v. United States, supra, the Court of Claims said:

"It is also argued by the defendants that this suit has relation to the revenue system of the United States, and hence is to be governed by some of the principles which have been established regarding the refunding of taxes under that system. The several statutes relating to that subject and numerous decisions under them, have been cited to sustain that contention. As it appears to us, the remedy given by Congress in this case has no relation whatever to the revenue system so far as the question of jurisdiction or method of procedure is concerned. True, the money which is directed to be refunded was illegally collected under the revenue system, and the Refunding Act provides that application for the same must be made to the Commissioner of Internal Revenue; but as the tax was paid voluntarily, its legality or illegality does not enter into the case. Reduced to its lowest terms, the act simply directs the Secretary of the Treasury to pay definite sums of money to certain persons therein described."

It is also of interest to note that the Attorney General in the Daley Case, 26 Op. Atty. Gen. 194, in which the question arose under the very Refunding Act we are now considering, decided that claims arising under the act of June 27, 1902, are not barred because of the failure of claimants to present them for allowance within two years from the date of payment; that the provisions of the act of 1902 are special and apply to a particular class of obligations against the government, and being special these claims are not governed by the provisions of a prior general statute (section 3228, Revised Statutes). This also was the view taken by the Circuit Court for the District of Massachusetts, in Thacher v. United States, 149 Fed. 902.

We are compelled to the conclusion that the judgment below should be affirmed, and it is so ordered.