### PUBLIC SERVICE RY. CO. et al. v. HEROLD.

#### (District Court, D. New Jersey. January 14, 1915.)

#### No. 481.

1. INTERNAL REVENUE ☞9—CORPORATION EXCISE TAX—CORPORATIONS LIABLE.

Where a street railway company leased its railway to another company, which assumed all incumbrances, debts, assessments, etc., and distributed the rental reserved by the lease among the stockholders of the lessor, and the lessor did no business, except to maintain its corporate existence and collect the rental, the lessor was not maintaining or operating a railroad, and was not taxable under Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (Comp. St. 1913, §§ 6300–6307), providing that every corporation organized for profit and having a capital stock represented by shares and engaged in business shall be subject to a special excise tax with respect to carrying on or doing business by it.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☞9.]

2. INTERNAL REVENUE ☞22—RECOVERY OF TAX—INDIVIDUAL LIABILITY OF COLLECTOR.

Where, though a street railway company had leased its railway to another company, which distributed the rental among the lessor's stockholders and was doing no business, so as to be subject to the excise tax imposed by Act Aug. 5, 1909, § 38, it was, as shown by its charter, an existing organization, with a right to operate a railroad, and appear-

ing to have officials for the transaction of corporate business, the collector of internal revenue, in collecting the assessment made against it by his superior, the Commissioner of Internal Revenue, was neither usurping authority nor acting so far outside the limits of his jurisdiction as to be personally liable to return the taxes, as revenue officials are often called on, not merely to ascertain facts in a ministerial capacity, but to deduce from facts a conclusion of a legal nature, and when their decision has been made honestly, within the general scope of the subject-matter over which they have authority to act, they are not · personally liable for an error, especially as the company dealt with him in his capacity as collector, and through him applied to the Commissioner for a refund.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 47–61; Dec. Dig. ☞22.]

3. INTERNAL REVENUE ☞38—RECOVERY OF TAXES—STATUTORY PROVISIONS. Under Rev. St. § 3220 (Comp. St. 1913, § 5944), authorizing the Commissioner of Internal Revenue to refund taxes erroneously assessed or collected, section 3226, providing that no suit for the recovery of any internal tax erroneously assessed or collected shall be maintained until an appeal shall have been duly made to the Commissioner and a decision of the Commissioner had therein, section 3227, providing that no suit or proceeding for the recovery of any such tax shall be maintained, unless brought within two years after the cause of action accrues, and section 3228, providing that all claims for the refunding of any such tax must be presented to the Commissioner within two years after the cause of action accrues, where suit to recover corporate excise taxes illegally collected was not brought within two years after the tax was paid, there could be no recovery, as the statutory remedy is exclusive, and the conditions therein prescribed must be complied with, and the cause of action accrues when the tax is paid.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ☞38.]

4. INTERNAL REVENUE ☞38—RECOVERY OF TAXES—STATUTORY PROVISIONS. Under Rev. St. §§ 3220, 3226–3228 (Comp. St. §§ 5944, 5949–5951), where claims for the refund of corporate excise taxes illegally collected were presented to the Commissioner of Internal Revenue, and rejected by him, more than two years after the taxes were paid, a suit could not be maintained to recover the taxes, as the Commissioner's adverse decision did not operate to extend the time within which suit could be brought.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ☞38.]

At Law. Action by the Public Service Railway Company and another against Herman C. H. Herold, removed to this court by ·certiorari. Judgment for defendant.

· Frank Bergen and Edward Ambler Armstrong, both of Newark, N. J., for plaintiffs.

J. Warren Davis, U. S. Atty., of Trenton, N. J., and Walter H. Bacon, Asst. U. S. Atty., of Bridgeton, N. J., for defendant.

HUNT, Circuit Judge. This action was originally brought in the Supreme Court of New Jersey, county of Essex, and was removed to this court on a writ of certiorari. Counsel and witnesses were heard on November 5, 1914, and briefs were submitted later.

The suit is for the recovery, with interest, of two sums of $542.20 each, assessed by the Commissioner of Internal Revenue, claiming to act under the act of Congress, hereinafter cited, approved August 5, 1909, as special excise taxes for the years ended December 31, 1909, and December 31, 1910, respectively, and paid by the Public Service

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Railway Company on June 29, 1910, and June 28, 1911, respectively, to the defendant, who was then the collector of internal revenue of the United States for the Fifth district of New Jersey.

The complaint alleges that the Rapid Transit Street Railway Company leased all of its property and franchises, except its franchise to be a corporation, to the Newark Passenger Railway Company on June 1, 1893, for a term of 999 years from that date, and that the former company has not carried on any business whatsoever since that time, except to receive the rental under the lease and to distribute it among its stockholders; that, by virtue of mesne assignments and transfers, all of the leasehold property was transferred to, and became vested in, the Public Service Railway Company; that the Rapid Transit Street Railway Company was not doing business within the meaning of the act of Congress aforesaid, and hence was not liable for said taxes; and that the Public Service Railway Company, which, under the terms of its lease was required to pay all taxes against said Rapid Transit Street Railway Company or the leasehold estate, was wrongfully, illegally, and improperly compelled by the defendant to pay the said sums, which it did under protest. The plaintiffs made claim in writing to the Commissioner of Internal Revenue for a refund of the amounts so paid on the ground that they were illegally, improperly, and wrongfully assessed and collected, which claim was refused by the Commissioner on December 1, 1913. The plaintiffs claim that an action thereby, on that date, accrued to them.

In his answer, the defendant objects, because the complaint discloses no cause of action—that it fails to show compliance by plaintiffs with section 3226, 3227, and 3228, R. S. U. S. He admits the making of the lease of the Rapid Transit Street Railway Company to the Newark Passenger Railway Company, but denies that the former company has not done or carried on any business except the receipt of the rental under the lease and the distribution thereof among its stockholders. He admits also the assignment and transfer of the leasehold property to the Public Service Railway Company. He admits the assessment and collection of the taxes, but denies that they were wrongfully or illegally assessed or collected, and avers that, at the time of payment of said sums, they were due and owing by plaintiffs for taxes under the aforesaid act of Congress. Defendant pleads also the statute of limitations, alleging that no claims for refund of these taxes were filed with the Commissioner of Internal Revenue until November 28, 1913, more than two years after they were paid, and pleads that section 3228, R. S. U. S., provides that all claims for the refunding of any internal tax alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner of Internal Revenue within two years next after the cause of action accrued, that these claims were not so presented, and that they were, therefore, lawfully rejected by said Commissioner of Internal Revenue on December 1, 1913.

In their reply, the plaintiffs deny that these taxes were lawful taxes, and aver that claims for refund were filed before the expiration of two years after causes of action accrued. Section 38 of the act of Congress approved August 5, 1909, entitled "An act to provide revenue,

equalize duties and encourage the industries of the United States and for other purposes," provides in part:

"That every corporation, * * * organized for profit and having a capital stock represented by shares, * * * and engaged in business in any state or territory of the United States, * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations * * * subject to the tax hereby imposed."

From the evidence, it appears that the Rapid Transit Street Railway Company was operated during the years 1909 and 1910 by the Public Service Railway Company as a part of its system of street railways in New Jersey, and that the rental for each of those years, under the provisions of the lease, was paid by the Public Service Railway Company to the Fidelity Trust Company, of New Jersey, as trustee, and by the latter company distributed among the stockholders of the Rapid Transit Street Railway Company. The lease from Rapid Transit Street Railway Company to Newark Passenger Railway Company, afterwards assigned to Public Service Railway Company, covered the railroads and property of the Rapid Transit Street Railway Company; the rental after 1893 being semiannual payments of $29,610 each, to be paid to a trustee. The lessee assumed all incumbrances upon the property of the lessor, interest accruing on the bonds of the lessor theretofore issued or thereafter issued, and the principal of the bonds as they matured, and all assessments, taxes, and special taxes assessed upon the real estate, franchise, stock, or earnings of the leasing Company. Provision was made also for funding bonds already issued, and issuing new bonds of the lessor corporation equal in amount to the bonds retired, and reissuing certificates of the lessor company. At the termination of the lease, the lessee was to deliver to the Rapid Transit Street Railway Company, or its successors, all property received by it or pay the value. The lessee company agreed to keep in good repair the railroad and its equipment, the lessor company having the right at times to make examination of the property and to notify the lessee company if the property is not put in good repair within 30 days from the notice by the lessee. The lessee company agreed to pay to the treasurer of the lessor company the sum of $100 annually for the "maintenance of the corporate existence of the lessee company." Operation of the road was required by the provisions of the lease in a manner to preserve the rights and franchises of the lessor company. Forfeiture clauses were incorporated in the provisions of the lease. Neither the stockholders nor the directors of the Rapid Transit Street Railway Company had met since 1903. The Public Service Railway Company paid the trustee's fee. Under the lease referred to, all of the property connected with the lessor company was turned over in due course to the Public Service Company, and the only business done by the original lessor company has been the maintenance of its corporate existence and the annual collection of the rental called for by the lease. The rental is distributed among the stock-

holders of the Rapid Transit Street Railway Company through the Fidelity Trust Company, as were also certain sums paid as interest on the Rapid Transit Street Railway Company's first mortgage bonds. During the years 1909 and 1910, no extensions or reconstruction of any railway lines were carried on by the Rapid Transit Street Railway Company or the Public Service Railway Company under the lease already referred to. Nor did the Public Service Railway Company, during those years, do any act of any kind with respect to the property leased, except to operate the property so leased and to maintain the same under the lease.

[1] It is in effect conceded by the defendant that, upon the facts as stated, the decision in McCoach v. Minehill Railway Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842, leads to a ruling that the Rapid Transit Street Railway Company was not engaged at all in the business of maintaining or operating a railroad, which was the real object of its incorporation. It had turned its business over. No suggestion is advanced that the lease heretofore referred to was not one authorized by the laws of the state of New Jersey. Nor can we trace the existence of any possible agency in the lessee as for the lessor. The effect of the lease was to make the Public Service Company the public agent for the operation of the railroad while the lease existed, and it is the Public Service Railway Company which is doing business under the provisions of the lease and may be taxable. That lessor and lessee may entirely escape from taxation on income as a consequence of this ruling is also explained by the decision of the Supreme Court in the case cited, wherein the court said that, as to rentals for the use and possession of property and franchises employed by the lessee company in a business taxable under the corporation act, there should be a deduction by the lessee of the amount of rentals paid for such use and possession, irrespective of the question of whether or not the lessor corporation is within the reach of the taxing scheme.

We therefore have an instance of the collection of money as internal revenue taxes by an official of the government, claiming to act under the provisions of acts of Congress, but in reality and in good faith mistaking the applicability of the law, in that he has collected sums as taxes from a corporation not subject to the tax assessed.

[2] The corporation, to reserve possible rights, made its return under a protest, and now seeks to get back the money paid, assuming the position that it may sue the defendant personally for money had and received, upon the ground that the defendant's actions were outside of the scope of the corporation tax law. Reasoning along this line, learned counsel for the plaintiffs say that the defendant has done acts not by way of official misconduct, whereby the rights of the plaintiff corporation have merely been impaired, but that he has extorted money in the name of taxation, and therefore is to be treated as having divested himself of his official character, and to be dealt with as an individual, liable for the consequences of his individual acts, without protection under the corporation tax law; that, in fact, he stands just as if he had never held office.

219 F.—20

The evidence shows that the assessment for the years 1909 and 1910 was paid by the Public Service Railway Company to "Herman C. H. Herold, Collector," and that the defendant gave a collector's receipt for the payment. The vouchers which accompanied the checks, as prepared by the Public Service Railway Company, were in favor of the defendant, collector of United States internal revenue, and all notices with respect to penalties which might be imposed if taxes were not paid were sent by the defendant as collector of internal revenue. Indeed, it seems plain that, at the time of the transactions with relation to the taxes assessed, the Public Service Railway Company, lessee, dealt with the defendant in his capacity as collector of internal revenue. Moreover, the plaintiffs, after alleging the official capacity of the defendant, state that the "Commissioner of Internal Revenue of the United States, claiming to act under and by virtue of the provisions of an act of Congress approved August 5, 1909, assessed a special excise tax,  *  *  * and that the defendant wrongfully, illegally, and improperly compelled the plaintiff Public Service Railway Company to pay the sum assessed"; that plaintiffs made claim for a refund through the "defendant as aforesaid to the Commissioner of Internal Revenue" by applications in writing, to which plaintiffs refer, which claim was refused by the Commissioner on December 1, 1913.

The statutes directly pertinent are as follows:

"All laws relating to the collection, remission, and refund of internal revenue taxes, so far as applicable to and not inconsistent with the provisions of this section, are hereby extended and made applicable to the tax imposed by this section." From section 38 of the act of August 5, 1909.

Sections 3220, 3226, 3227, and 3228, R. S. U. S.:

"Sec. 3220. The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected.  *  *  *"

"Sec. 3226. No suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the Commissioner has been had therein: Provided, that if such decision is delayed more than six months from the date of such appeal, then the said suit may be brought, without first having a decision of the Commissioner at any time within the period limited in the next section.

"Sec. 3227. No suit or proceeding for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, shall be maintained in any court, unless the same is brought within two years next after the cause of action accrued.  *  *  *

"Sec. 3228. All claims for the refunding of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, must be presented to the Commissioner of Internal Revenue within two years next after the cause of action accrued.  *  *  *"

The duty of the Commissioner of Internal Revenue (who is not a party to the present suit) is to make assessments upon the returns made of corporations subject to the payment of the special excise tax provided for by the act of August 5, 1909, and it is the duty of the collectors of internal revenue, in their respective districts, to make the collections assessed as aforesaid.

Now, when the revenue officials looked into the particular matter of the status of these plaintiffs, they found two corporations organized under the laws of the state of New Jersey—one, the Public Service Railway Company; the other, Rapid Transit Street Railway Company. The charter of each showed that it was a living, existing, corporate organization, with right to operate a railroad (whether as lessee or otherwise), and to do those things which under the laws of the state of New Jersey a public service corporation may lawfully do in the premises, including a right to issue bonds and to exercise the power of eminent domain. Each appeared to have officials for the transaction of corporate business, and each appeared to be a corporation organized for profit and having a capital stock represented by shares. Starting with this general information, surely the revenue officials were justified in assuming that each corporation was doing acts enough to subject it to the special tax, unless upon further investigation it should be ascertained that it was not carrying on or doing business. Necessarily determination of this further point involved ascertainment of certain additional conditions and facts and then drawing a conclusion therefrom whether, largely as a matter of law, the corporation investigated was carrying on or doing business as contemplated by the provisions of the excise tax statute. And what may we reasonably say the revenue officials found in such further investigation as to Rapid Transit Company? That it had assigned its right to operate a railroad under its original charter, but that it had expressly reserved its corporate existence, and that it was maintaining the same in apparent accord with law; that it was in the enjoyment of a considerable income paid to it semiannually by the Public Service Railway Company, apparent assignee of the rights originally leased to a predecessor lessee, and that the income so received by it from the Public Service Company, lessee, was distributed to the lessor's stockholders as they appeared upon its corporate books. Finding these several things with respect to corporate affairs, the internal revenue officials, acting in a quasi judicial sense, concluded that the Rapid Transit Street Railway Company, as well as Public Service Company, was subject to tax and that its claim of exemption was not well founded.

Can it be that, under such a state of facts, the collector of internal revenue of the local district, whose duty was to collect the assessment made by his superior, the Commissioner, is to be looked upon as having gone so far outside of the scope of his official duty as a revenue officer as that, in demanding payment and receiving it, he must be held to have acted wholly without warrant of law, and is, therefore, individually liable? I should say no, because, being clothed with a general authority within his district to collect internal revenue

taxes assessed by the Commissioner, he was neither usurping authority nor acting so far outside of the limits of his jurisdiction as to be removed from that protection which should be extended to officers acting in good faith under color of their offices. This would seem to be just, when we remember that the duties placed upon revenue officials often call, not merely for the ascertainment of facts, wherein the official acts in what is called a ministerial capacity, but for the deduction from facts of a conclusion of a legal nature upon which liability is or is not in the first instance to be declared. Just what nice distinctions must sometimes be made by the revenue authorities, and how hard it is for them to apply the law, is well exemplified by the Minehill Case, supra, where even under judicial test the question of what constitutes doing business was so close that the learned justices of the highest court found themselves in disagreement as to what proper conclusion followed the undisputed facts. It goes without saying that internal revenue officers, like all others called upon to administer laws, whether in one or another branch of government, not infrequently err in their conclusions, and as a result make illegal assessments and collections; but even so, where the decision of such an official has been made honestly, and his action is within the general scope of the subject-matter over which he has authority to act, ordinarily the official is not personally liable for his error. The case is not one where the official has collected taxes under a statute null and void, because unconstitutional, as was the case in Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764. Nor have we any facts showing abuse of power to the irreparable loss of a party, as in Philadelphia Co. v. Stimson, Secretary of War, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570. Nor was there any invasion of rights such as appeared in United States v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171.

[3, 4] As the sequel to the views just expressed is that this suit is to be regarded as maintainable against the defendant as a collector of internal revenue and not otherwise, the single remaining question is whether plaintiffs, having been unlawfully assessed and having paid the tax under objection, can recover back in this suit. The answer lies in this: The remedy to recover back an internal revenue tax after paid is exclusively as specified in the statute. The Supreme Court has held in Snyder v. Marks, 109 U. S. 189, 3 Sup. Ct. 157, 27 L. Ed. 901, that no other remedy can be substituted for that given by statute, for the system prescribed by the United States in regard to internal revenue taxes and their collection by measures not judicial, with appeals to specified tribunals, and suits to recover back moneys illegally exacted, "was a system of corrective justice intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues." United States v. Shipley, 197 Fed. 265, 116 C. C. A. 627. The conditions, then, which we meet here, include statutes fixing a time when the plaintiffs could have presented their claims for refund and begun their action, and at the end of which their right of action ceased. Arnson

v. Murphy, Collector, 109 U. S. 238, 3 Sup. Ct. 184, 27 L. Ed. 920. Plaintiffs did not present their claims to the Commissioner of Internal Revenue until November 28, 1913, and on December 1, 1913, that official refused to allow them. They filed this suit in the Supreme Court of New Jersey on December 18, 1913, and thereafter it was filed in this court January 7, 1914. But it was on June 29, 1910, that they paid the assessment for the year 1909, and on June 28, 1911, that they paid the tax for 1910. Under these facts the causes of action accrued when plaintiffs paid the taxes. From the dates of such respective payments plaintiffs had two years as the periods in which they could have filed their claims for refund with the Commissioner, and they were limited to such period. But they let more than two years go by, so that, when the Commissioner decided adversely to them, his decision did not operate to extend the time within which they could begin suits for the refunds. Merck v. Treat, Collector, 174 Fed. 388, 98 C. C. A. 606; Hastings v. Herold (C. C.) 184 Fed. 759; Schwarzchild & Sulzberger v. Rucker, Collector (C. C.) 143 Fed. 656; U. S. v. Shipley, 197 Fed. 265, 116 C. C. A. 627.

Defendant is entitled to judgment.