PUBLIC SERVICE GAS CO. et al. v. HEROLD.

(District Court, D. New Jersey. January 19, 1915.)

No. 483.

1. INTERNAL REVENUE ⬗38—LICENSE TAXES—RECOVERY BACK.
    Corporation taxes, assessed by the Commissioner of Internal Revenue and paid, cannot be recovered back, where the taxpayer did not comply with Rev. St. U. S. §§ 3226, 3227, 3228 (Comp. St. 1913, §§ 5949–5951), providing for the recovery of taxes wrongfully collected within two years after accrual of the right of action, and for submission of claim within that time.
    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⬗38.]

2. INTERNAL REVENUE ⬗9—CORPORATION TAX—"DOING BUSINESS."
    A gas company leased all of its property, the contract of lease providing that the lessee should assume the company's contracts and should be entitled to use the company's name whenever necessary to have the benefit of its franchises. It was also agreed that the lessor's plan should be maintained by the lessee, who should make any necessary or advisable extensions. The company retained its corporate organization, paying secretary's salary, directors' fees, and for books and postage used in the distribution of dividends and the payment of interest on bonds. No new bonds, however, were issued, although stock owned by the company in another corporation was voted. *Held*, that the company was not "doing business," within Act Aug. 5, 1909, c. 6, 36 Stat. 11 (Comp. St. 1913, §§ 6300–6308), and so was not liable to corporation taxes.
    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⬗9.
    For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

At Law. Action by the Public Service Gas Company and another against Herman C. H. Herold, originally brought in the Supreme Court of New Jersey, and removed to the federal court on certiorari. Judgment for plaintiffs.

Frank Bergen and Edward Ambler Armstrong, both of Newark, N. J., for plaintiffs.

J. Warren Davis, U. S. Atty., of Trenton, N. J., and Walter H. Bacon, Asst. U. S. Atty., of Bridgeton, N. J., for defendant.

HUNT, Circuit Judge. This action was originally brought in the Supreme Court of New Jersey, county of Essex, and was removed to this court on a writ of certiorari. A trial was had before this court on November 5, 1914.

The action is for the recovery, with interest from the dates of payment, of certain taxes assessed against the Newark Consolidated Gas Company by the Commissioner of Internal Revenue under the act of Congress approved August 5, 1909, as special excise taxes for the years ended December 31, 1909, 1910, 1911, and 1912. The taxes were paid, under protest, by Public Service Gas Company.

[1] Following the decision filed in case No. 481, Public Service Railway Company and Rapid Transit Street Railway Company v. Herold, 219 Fed. 301, the plaintiffs have failed to show a right to a refund of the taxes assessed for 1909 and 1910, in that they did not comply with the provisions of sections 3226, 3227, and 3228 of the Revised Statutes of the United States (Comp. St. 1913, §§ 5949–5951).

[2] Passing to the taxes for 1911 and 1912, we find the question is whether the Newark Consolidated Gas Company was doing business. In the case of Public Service Railway Company and Rapid Transit Street Railway Company v. Herold, No. 481, the corporation, Rapid Transit Street Railway Company, was wholly inactive, except as defined in the statement of facts included in the opinion in that case. But here the defendant has submitted evidence showing a number of acts of a different kind performed by the Newark Consolidated Gas Company during the years 1911 and 1912.

These are among the material facts: The Newark Consolidated Gas Company was incorporated in 1898 by the merger and consolidation of some five other gas companies, each of which was incorporated in New Jersey to engage in the business of supplying gas and water to various municipalities within the state of New Jersey. The Newark Consolidated Gas Company, as a result of the consolidation, was clothed with the rights, privileges, powers, immunities, and capacities which had theretofore been granted to and possessed by the several corporations which had been merged into the Newark Consolidated Gas Company. On December 1, 1898, the Newark Consolidated Gas Company leased all its property and franchises, except its franchise for corporate existence, to United Gas Improvement Company of Pennsylvania. The term of this lease was 999 years. On the same day (December 1, 1898) this lease was assigned to Essex & Hudson Gas Company, and by various mesne assignments thereafter became vested in Public Service Gas Company of New Jersey, plaintiff herein. Under the lease the lessee received all the gas plants and works owned and operated by the lessor, together with all property belonging to the lessor as a going concern, and all rights, privileges, and franchises connected with or relating to the lessor company, or any part thereof, reserving, however, for the lessor the franchise to be a corporation and rentals covenanted to be paid. The lessor further granted unto the lessee "the right to make use of its corporate name in the use of said franchises or in the making of contracts and in the conduct of business," the lessee to hold the lessor harmless from any damages resulting therefrom. The lessor company agreed to do all necessary things to maintain its corporate existence, franchises, rights, and privileges, and the lessee agreed that it would in good faith, to the best of its ability, do all that it could to preserve and extend the business

of the leasing party. All contracts existing with the Newark Consolidated Gas Company for public lighting and for the supply of gas generally were to be performed by the lessee. Detailed provision is made with relation to mortgages outstanding and bonds that have been issued and contracts existing.

The evidence showed that the franchises are still in existence, and it is under franchises that gas plants are located and supplied with gas in the various municipalities. It also appears that the Newark Consolidated Gas Company voted stock which it owned in corporations apparently in no way identified with any of those which were part of the number which went into the consolidation heretofore referred to. For instance, on September 1, 1909, a special meeting of the directors of the Newark Consolidated Gas Company was held to authorize the voting of the stock of the East Newark Gaslight Company, then owned by the Newark Consolidated Gas Company, in favor of a proposed lease of the property and franchises of the East Newark Gaslight Company to the Public Service Corporation, and a resolution was passed naming the Fidelity Trust Company of New Jersey to vote stock in favor of ratifying such proposed lease. Again, on December 17, 1909, at a meeting of the Newark Consolidated Gas Company directors, representatives of the Newark Consolidated Gas Company were appointed to attend the annual meeting of the Orange Gaslight Company, under the proxies of the Newark Consolidated Gas Company, to vote the stock owned by such company for the election of directors, or for any other business that might properly come before the meeting. The Orange Gaslight Company is not one of the constituent companies of the Newark Consolidated Gas Company. The stockholders and directors of the Newark Consolidated Gas Company hold meetings, but the Newark Consolidated Gas Company has issued no new securities, has acquired no property, and has issued no bonds since January 1, 1909. Examination and inspection of the leased property is made by the lessor company, and pipe line extensions are being frequently made in the name of Public Service Gas Company, which, however, obtains the right to make them through the franchises acquired by the leases and assignments already referred to.

From these facts I conclude that thus far, except for the receipt of the money provided for by the lease and distribution thereof among its stockholders and the payment of the interest on the bonds and the maintaining of the organization of the company, the Newark Consolidated Gas Company has itself carried on no business for which it was organized during the years 1909, 1910, 1911, and 1912. It is true various sums were expended during each of the years referred to by the Newark Consolidated Gas Company for the maintenance of its corporate organization, secretary's salary, directors' fees, stationery, check books, minute books, postage, etc.; but these things do not affect the case under the application of the rule of McCoach v. Minehill Railway Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842. Indeed, many of the provisions of the lease here involved are substantially like those which were before the Supreme Court in the Minehill Case

There, as here, there was provision that the lessee should keep the premises in good order and repair, should maintain and efficiently operate the same, and should protect the lessor company against liabilities, damages, claims, and suits by reason of anything done or omitted by the lessee company in the premises.

Furthermore, in the Minehill Case, as in this, there was an agreement that the lessor company should maintain its corporate existence, and that it would, when requested to do so, put in force and exercise corporate powers possessed by it, to the end that the lessor company might avail itself of every right, franchise, and privilege in respect to the use, management, maintenance, renewal, and extension right appertaining to the business to be carried on. Notwithstanding such provisions, the Supreme Court, recognizing that the lease was one authorized by law, regarded the instrument as in effect one constituting the lessee company the public agent for the operation of the property and as effective in preventing the lessor company from carrying on business in respect of the maintenance and operation of the property there involved so long as the lease should continue. The court was therefore of opinion that it was the lessee company, and not the lessor company, that was doing business with respect to the property covered by the lease. Again, in the Minehill Case, the attention of the court was specifically addressed to the point that the lessor company was holding meetings of its stockholders, was declaring dividends, collecting rentals, managing finances, and investing funds, maintaining offices, and preserving its corporate franchises. Nevertheless, the court held that the effect of these several activities was not to constitute the doing of business for which the company was organized. The doctrine of the Minehill Case really rests upon the principle that, where the lessor corporation has become wholly inactive, it is in a position not unlike that of a retired investor, who lives upon his income, declining to exert any business forces to do the things he has leased or granted to others. There is, then, no exercise of the privilege of carrying on the business passed to others.

It therefore seems impossible to distinguish the essential features of this case from those in the Minehill. In this observation no thought is lost of these points: One of the clauses of the present lease requires maintenance by the lessee of the various plants, mains, pipes, etc., in the state of efficiency in which they were at the time of delivery, and that they shall be extended by the lessee with the increase of profitable demand for service of gas, or such increase shall be stimulated whenever the lessee shall deem judicious. It is also provided that the lessee company shall have the right to make use of the corporate name of the lessor in the use of franchises or in the making of contracts and in the conduct of the business, the lessee to hold the lessor harmless from any damages resulting therefrom, and it appears that the Public Service Gas Company, lessee herein, is making "extensions" of gas mains and pipes from time to time in carrying on the business for which the Newark Consolidated Gas Company was organized. But there is nothing to show that the Newark Consolidated Gas Company has exerted any of its charter powers

in aiding the lessee company to make these extensions in any way for the benefit of the lessee, except in having authorized the use of its name, as the lease provides. Obviously, considering the character of the property leased, a gas plant in cities and towns, no reasonable enjoyment of the rights conveyed under the terms of the lease could be had unless the lessee company could make reasonable extensions of gas mains under its franchises. Apparently to cover such enjoyment, and to withdraw from active carrying on of the gas business, the lessee was given the express right to make such reasonable extensions as could have been made by the lessor under its franchises.

I would say that merely having granted the right of the use of the lessor's name to the lessee in making contracts, and the subsequent use by the lessee of the lessor's name in making extensions, does not justify a ruling that the lessor was carrying on business under the act of Congress as interpreted in the Minehill Case already cited. Upon the whole case, I find that the things done by the Newark Consolidated Gas Company did not constitute the carrying on of business, and that it ought not to have been assessed for 1911 and 1912. Judgment for amounts paid for taxes for those years should go in plaintiffs' favor.

As to taxes for 1909 and 1910, the defendant is entitled to prevail.