. PUBLIC SERVICE RY. CO. et al. v. MOFFETT.

(District Court, D. New Jersey. January 25, 1915.)

No. 485.

1. INTERNAL REVENUE ⊕⇒38—RECOVERY OF TAX PAID—LIMITATIONS.

    The limitation for action to recover an illegally collected excise tax on a corporation as doing business is two years from the payment.

    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⊕⇒38.]

2. INTERNAL REVENUE ⊕⇒9—EXCISE ON CORPORATION—"DOING BUSINESS."

    A corporation, which leases its business as it exists, but in doing so preserves a right to extend such business for the benefit of the lessee, if the lessee requests it, is thereafter "doing business," and so subject to the excise tax, under Act Aug. 5, 1909, c. 6, 36 Stat. 11, where it exerts such reserve power in a substantial way, so as to acquire additional property, though doing so for the benefit of the lessee as well as itself.

    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⊕⇒9.

    For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

At Law. Action by the Public Service Railway Company and another against Isaac Moffett. Judgment for defendant.

Frank Bergen and Edward Ambler Armstrong, both of Newark, N. J., for plaintiffs.

· J. Warren Davis, U. S. Atty., of Camden, N. J., and Walter H. Bacon, Asst. U. S. Atty., of Bridgeton, N. J., for defendant.

HUNT, Circuit Judge. [1] This is another of the cases associated with No. 481, Public Service Railway Company & Rapid Transit Street Railway Company, Plaintiffs, v. Herold, Defendant (D. C.) 219 Fed. 301. It involves taxes paid for 1909, 1910, 1911 and 1912. Following the ruling in case 481, the defendant's plea of the statute of limitations with respect to the taxes for 1909 and 1910 must be sustained.

[2] Whether or not the Camden Horse Railroad Company was doing business during the years 1911 and 1912 is necessarily involved. It appears that the property of the Camden Horse Railroad Company and its franchises were leased to the Camden & Suburban Railway Company, and that this last-named corporation by the lease of its property included its leasehold estate in the Camden Horse Railroad Company; this last referred to lease running to the South Jersey Gas, Electric & Traction Company, which assigned to another corporation as lessee, which thereafter assigned to Public Service Railway Company, one of the plaintiffs herein. The lease runs for 999 years, and includes all of the property of the Camden Horse Railroad Company, except its franchise to be a corporation. The active physical operation of the Camden Horse Railroad Company is carried on by the Public Service Railway Company. · The property of the Camden Horse Railroad Company consists of street railway tracks, overhead construction, wires, car barns, and other things necessary in and about the carrying on of an electric car line.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Under the terms of the lease made by the Camden Horse Railroad Company there was an agreement that such company would exercise its corporate powers and functions at any time and would apply for additional franchises as might be necessary whenever the lessee should desire an extension of the railway demised or any branches or double tracking thereof or the extension of tracks. It appears that the Camden Horse Railroad Company did, in 1912, make a petition for the granting of an ordinance by the city council of Camden for the purpose of building a connecting railroad between certain streets in the city of Camden. Presumably the right to make such connection was valuable and important, or it would not have been applied for. Consent of certain property owners was necessary to be obtained, and was secured, and the Camden Horse Railroad Company accepted the ordinance in October, 1912. Again, at a meeting of the corporation on March 26, 1909, the Camden Horse Railroad Company directed its officers to make and have issued bonds to pay off and discharge certain maturing bonds in the amount of $250,000, and to procure the cancellation of certain bonds and a mortgage. This was done by issuing the bonds of the Camden Horse Railroad Company, the object being to replace $250,000 of bonds which matured under another mortgage. Furthermore, the corporation sold certain real property in 1909, the sale being referred to in the meeting of the directors of December 14, 1909, as having been had "in the usual course of business." It appears that such sales of realty were made, as were the acceptances of ordinances filed, at the requests of the lessee corporation. Inspection of the leased property was also had by a committee acting in behalf of the lessor.

Clearly part of these activities by the lessor went beyond such as were reasonably necessary for the protection and preservation of the property included in the lease as existing at the time of the execution thereof, and farther than was requisite only to enable the lessor to live up to the covenants of the lease with respect to such then existing property and yet refrain from engaging in business. Buying and selling pieces of real estate, applying for and obtaining valuable franchise rights, and so substantially extending routes, meant changes in the quantity and value of the property owned and in existence when the lease was made. They represent the exercise of vital, active, corporate forces by the lessor in effectually, at the instance of the lessee, adding to or changing its properties which had been leased. Thus the attitude of the owner became, not that of an investor, who leases all its property and does nothing except to preserve the property leased, guard its titles, collect its rents, and distribute them, but rather that of one who, alive to business opportunities, adds to its principal properties, exerts itself to dispose of some investments, to make others, and in co-operation with or at the request of the lessee, does all with a view to enhancing the value of the leased estate. The case is, therefore, outside of the rule in McCoach v. Minehill Railway Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842, in that such a lessor is doing business. A lessor corporation, which transfers its business as it exists to-day, yet in doing so preserves a right to ex-

tend such business for the benefit of the lessee, if the lessee requests it, and which thereafter exerts such reserved power in a substantial way, so as to acquire additional property, ought not to say that it is not doing business, because it performs the acts it does for the benefit of its lessee as well as of itself.

Defendant is entitled to judgment.