PUBLIC SERVICE ELECTRIC CO. et al. v. HEROLD.

(District Court, D. New Jersey. February 9, 1915.)

No. 498.

INTERNAL REVENUE ⬤⟳9—EXCISE ON CORPORATION—"DOING BUSINESS."

A corporation is "doing business," and so subject to the excise tax, under Act Aug. 5, 1909, c. 6, 36 Stat. 11, where, though leasing all its property and franchises, except its franchise to be a corporation, it exerts its corporate powers, whether at its own institution or that of the lessee, by an activity carried on, as by issuance and sale of bonds, to increase its estate, or to do things more than reasonably necessary to enable the lessee to enjoy the rights in existence at the time of the lease or incidental thereto.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⬤⟳9.

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

---

At Law. Action by Public Service Electric Company and another against Herman C. H. Herold. Judgment for defendant.

Frank Bergen and Edward Ambler Armstrong, both of Newark, N. J., for plaintiffs.

J. Warren Davis, U. S. Atty., of Camden, N. J., and Walter H. Bacon, Asst. U. S. Atty., of Bridgeton, N. J., for defendant.

HUNT, Circuit Judge. On motion for a nonsuit by the defendant. The question for decision is whether or not the plaintiff corporation South Jersey Gas, Electric & Traction Company was doing business within the meaning of the corporation excise tax law and liable to pay taxes assessed against it for the year 1912. See 36 Stat. c. 6.

South Jersey Gas, Electric & Traction Company is the outgrowth of a merger and consolidation of a number of other corporations. In 1903 the South Jersey Gas, Electric & Traction Company made a lease to the Public Service Corporation of New Jersey of all of its property for 900 years. The lease contains many covenants substantially similar to those referred to in the cases of Public Service Railway Company and Bergen Turnpike Company v. Herold, 227 Fed. 500, Public Service Railway Company and Rapid Transit Street Railway Company v. Herold, 219 Fed. 301, Public Service Gas Company and Newark Consolidated Gas Company v. Herold, 227 Fed. 496, and Public Service Railway Company and Camden Horse Railroad Company v. Moffett, 227 Fed. 494. It covered all of the gas and electric light plants and works and the franchises which belonged to the lessor, excepting the franchise to be a corporation, stock books, title records, and certain other property not necessary to be considered. The lessor agreed to do all things necessary to enable the lessee to enjoy the powers, rights, and property conveyed by the lessor, and that it would, at the expense and request of the lessee, exercise all such franchises, and do any and all acts consistent with its rights under the lease as would be proper and necessary for the protection and enjoyment by the lessee of all the franchises and interests granted to it by the lease. The lessee also gave to the lessor the right in the name of the lessee to apply for further rights to lay and maintain pipes for gas plants, and to use the lessor's name in taking any and all action for the protection and enjoyment of the rights conveyed by the lease. The lessee agreed to pay the interest on the bonds outstanding and the interest on any bonded indebtedness that might thereafter be created for the purpose of extending the time of payment of the existing bonds or refunding the same. The lessee agreed to operate the property and to extend the business as might be necessary and proper. The lessee had the right to notify the lessor whenever it (the lessee) might require money for purposes of meeting expenses for adding to or extending or bettering the plant or acquiring new property, and it would become the duty of the lessor to take such action with respect to bonds as would protect the rights of the lessee. The lessor agreed to join the lessee in any and all conveyances necessary to accomplish any sale or conveyance subject to mortgage or renewal.

The record made up on the trial shows that at a meeting of the

directors of the lessor corporation held on June 10, 1912, the question of the sale of certain shares of stock owned by the lessor in five certain other gas and electric light companies was considered. The properties in which such shares of stock were owned (and it is to be gathered that South Jersey Gas, Electric & Traction Company owned the bulk of properties) were located in the state of Pennsylvania. The proper officers of the company (lessor herein) were authorized to sell all the shares of the capital stock in such several companies and to make proper assignments of the shares to the purchasers or to their nominee upon the payment of a sum of not less than $200,000. The board of directors also resolved that the trustee under a general mortgage of the South Jersey Gas, Electric & Traction Company bearing date the 27th of February, 1903, should be requested to release from the lien of mortgage all of the shares referred to which were then pledged with it as trustee, and the officers of the corporation were authorized to pay over to the Fidelity Trust Company, as trustee, the proceeds of the sale of the shares of capital stock to be used in improvements and betterments of the property subject to the mortgage. The board further resolved that:

"The lessees now operating said properties be, and they are hereby, requested to consent to said sale and release possession of the premises to said purchasers."

At another meeting of the directors held on November 4, 1912, the minutes show that the corporation was notified that the sum of $750,-726.96 had been expended by the Public Service Gas Company in making additions to, and extensions and betterments of, the plant of South Jersey Gas, Electric & Traction Company, and bonds were authorized to be issued by South Jersey Gas, Electric & Traction Company in order to reimburse the Public Service Gas Company for moneys expended, as provided in the lease already referred to. Accordingly, application to the proper authorities was provided for whereby South Jersey Gas, Electric & Traction Company could issue bonds, which bonds should be thereafter delivered to the Public Service Gas Company to reimburse the latter company for expenditures. Thereafter further issues of bonds were provided for and the directors of the lessor corporation were notified by the Public Service Corporation of New Jersey and the Public Service Gas Company and Public Service Electric Company that they desired the proceeds of the sale of the stock of the Pennsylvania corporations heretofore referred to to be paid to the Public Service Gas Company and Public Service Electric Company to reimburse them for moneys expended in improvements. Authorization for reimbursement was made. At some time later some insurance money was collected by the lessor, which became due by reason of a fire which damaged certain properties covered by the lease. The Public Service Gas Company was authorized to collect the money for the purpose of rebuilding and restoring the damaged premises.

Inasmuch as it would appear that the shares of stock which were sold had relation to the obligations included within the lease, the pro-

ceeds of such sales having been paid to the lessee to reimburse it for moneys expended in betterments, the transaction should be looked upon as but incidental to the payment of moneys due by the lessor to the lessee under the covenants of the lease rather than as a partial "carrying" on of the business for which the corporation was created. But even from such a viewpoint there is still present the fact that the lessor company with detailed care used its powers to issue the bonds heretofore referred to. It may be that none of the bonds issued were for the payment of property acquired· under new franchises obtained through the efforts of the lessor company at the behest of the lessee; yet they were issued, not merely for betterments, but for extensions made by the lessor company, and, as may be gathered from the very large sum covered by the bonds, the transactions for which the bonds stood were very much more than mere maintenance, and such betterments and extensions as were reasonably incidental to the enjoyment of the originally leased property.

Without attempting to arrive at any exact definition, but adverting to some general principles which would seem to be pertinent, it may be said that, where there has been a practical surrender of all of the lessor's rights to operate and maintain, reserving the right of corporate existence, and where the use of such reserved corporate power is only for preserving the property leased, or for enabling the lessee to do such things effectively as are reasonably incidental to the preservation of the property and the enjoyment by the lessee of the rights and privileges conveyed by the terms of the lease, there is not an engagement in business by the lessor. But where (whether at its own instigation or that of the lessee) the lessor corporation exerts its corporate powers by an activity carried on to increase the estate of the lessor, or to do things more than reasonably necessary to enable the lessee to enjoy the rights in existence at the time of the lease and such rights as are incidental thereto, then the lessor company may be held to be engaged in the business for which it was incorporated, and is therefore brought within the statutes.

Undoubtedly there may be a doing of business by performing less than all of the principal acts to do which the corporation has been organized, even though such acts are but steps in doing the principal thing for which the corporation exists. For example, a corporation cannot buy a street railway line, and lease the right to operate it, and actually surrender the operation to a lessee, yet, under its retained franchise to be a corporation, continue to obtain new franchises, buy and sell lands, condemn lands under eminent domain, inspect its properties, and sell bonds for the payment of newly added property or extensions of a substantial character, and still say it has done these things for the lessee, and is not carrying on the business for which it was organized, simply because it is not itself actually running the cars and otherwise controlling the physical operation of the railway. Under such conditions it really does the fiscal business of the operating company, and, though it does it in aid of the operating business of the lessee, it is none the less in the enjoyment of the privilege of doing business.

It is oftentimes difficult to determine just where the line should be drawn, but. subject to these general observations it does not seem to me that the lessor company in this case can be excluded from a fair application of the statutes. Judgment must therefore go in favor of defendant.

Let a judgment go accordingly.