TRACTION COS. v. COLLECTORS OF INTERNAL REVENUE (six cases).

(Circuit Court of Appeals, Sixth Circuit. June 8, 1915.)

Nos. 2682–2687.

1. INTERNAL REVENUE ⊜⇒9—EXCISE TAX ON CORPORATIONS—CORPORATION "ENGAGED IN BUSINESS."

The true test of distinction to determine whether a corporation organized for a business purpose is "engaged in business" within the meaning of the Corporation Tax Law (Act Aug. 5, 1909, c. 6, § 38 (1), 36 Stat. 112 [Comp. St. 1913, § 6300]) so as to be subject to the excise tax thereby imposed is whether it is continuing the body and substance of the business for which it was organized, and in which it set out, or whether it has substantially retired from it and turned it over to another. If the latter appears then its tax exempt status must be tested by the further query whether it had during the critical period done only such acts as are properly and normally incidental to the status of a mere lessor of its property or whether it has exercised its peculiar corporate franchise outside of and beyond the fair scope of that status.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⊜⇒9.

For other definitions, see Words and Phrases, First and Second Series, Engage.]

2. INTERNAL REVENUE ⊜⇒9 — EXCISE TAX ON CORPORATIONS — CORPORATION "ENGAGED IN BUSINESS."

Street and suburban railroad companies which owned and had operated their lines leased the same to an operating company for the full term of their franchises. Thereafter they did only what was necessary to maintain their organization, and collect and disburse their rentals in

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dividends and otherwise, except that in accordance with the provisions of some of the leases, giving the lessees the right to sell unimportant items of property, which was not needed and to reinvest the proceeds in other property subject to the lease, the lessors joined in conveyances of the property sold; also in one case under the terms of the lease the lessor issued to the lessee treasury stock and bonds previously authorized for improvement purposes, in payment for such improvements made by the lessee, and in another case the lessee brought a suit in the name of the lessor, the latter having no connection with the case. *Held* that none of such acts constituted "engaging in business" within the meaning of the Corporation Tax Act, § 38, and that such corporations were not subject to the excise tax imposed thereby.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☞9.]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John E. Sater, Judge.

Actions by the Columbus, Newark & Zanesville Electric Railway Company and by the Dayton & Eastern Traction Company against Bernhard Bettman, Collector of Internal Revenue, and by the Ft. Wayne, Van Wert & Lima Traction Company, by the Columbus, Newark & Zanesville Electric Railway Company, by the Indiana, Columbus & Eastern Traction Company, and by the Cincinnati Street Railway Company against Andrew C. Gilligan, Collector of Internal Revenue. Judgment for defendant in each case, and plaintiffs bring error. Reversed.

Under the above arbitrary title we group six causes which were heard as one. In each, the question involved was whether the plaintiff in error, plaintiff below, was "carrying on business," so as to be subject to pay the excise tax under the Corporation Tax Law (Act Aug. 5, 1909) § 38, 36 Stat. 112. In each case, the tax was paid under protest, suit was brought to recover the same, judgment was directed in the court below for the defendant revenue collector, and plaintiff has brought error. Each one of the plaintiffs is an interurban or street railway, organized under the laws of Ohio, which had built and operated a railroad, and then, before the accruing of the tax involved, had leased the railroad to an operating company (for the whole franchise period), and had ceased to carry on business, *unless* maintenance of its corporate organization and office, receiving of accrued rentals and distributing them as dividends among its stockholders, investing its undistributed receipts, and the other acts hereafter specified constituted such "carrying on" of business as required the imposition of the tax. Each case is, in a general way, analogous to McCoach v. Minehill, etc., R. R., 228 U. S. 295, 33 Sup. Ct. at page 419, 57 L. Ed. 842. In these cases, as in that, it must follow that the lessor railroads were exempt from this tax, unless the additional circumstances here presented are sufficiently distinguishing. The claims of such distinction are based upon that portion of the opinion of the court in the McCoach Case which says (page 305 of 228 U. S., at page 423 of 33 Sup. Ct. [57 L. Ed. 842]): "It should be mentioned that there is nothing in the record to show that during the taxing years in question the company exercised its power of eminent domain, or put in force any other special corporate power, in aid of the business of the lessee. We therefore do not pass upon the question whether, if it should do so, it would be taxable under the act in question."

The supposedly distinguishing circumstances, which appear in one or another of these cases, can be classified into three groups:

(a) Two of the leases provided for the sale of portions of the real estate and the substitution of other property. The pertinent portions of the respec-

tive leases on this subject are quoted in the margin.[1] One lessee sold one and the other sold two comparatively trifling parcels of real estate, and the lessors joined in the deeds. In another instance, which belongs in this group, the lessee company made a traffic contract with another traction company, permitting the latter to run some of its cars over some of the railroad lines covered by the lease, and upon the foot of this contract the president of the lessor company, pursuant to a resolution of its board, indorsed the consent and approval of the lessor company thereto. This approval was not required, either by the lease or by the traffic contract.

(b) One of the lessees, in constructing an extension to the leased lines, was about to cross, at grade, a steam railroad, and the latter was proposing to resist such construction. Thereupon action was brought against the steam railroad in the name of the lessor traction company, as plaintiff, to enjoin the steam railroad from preventing such crossing. This action was prosecuted in the trial court to a final decree for injunction, but had been appealed and was still pending. The lessee was the real party in such action, managed the same, and paid all expenses, and the lessor had no connection therewith, except to permit the use of its corporate name therein pursuant to a provision of the lease whereby the lessor covenanted "that the lessee may use the name of the lessor in bringing, prosecuting, or defending any suits or proceedings in law or in equity which may be necessary or proper in the opinion of the lessee for taking action hereafter for the protection and preservation and full enjoyment by the lessee of all the property, rights, and privileges hereby leased; * * * but the lessee shall pay and hold the lessor harmless and indemnified from and against all loss, cost, damages, and expenses whatsoever arising therefrom."

(c) Some of the lessors, during the year involved, had issued their treasury capital stock, or caused to be issued their reserve bonds in the hands of their mortgage trustees, for the purpose of financing the lessees in making extensions or betterments or acquiring new items to be added to the body of leased property. This was pursuant to lease provisions substantially similar in different cases, and examples of which are given in the margin.[2]

---

[1] NOTE.—From one lease: "Whenever any of the real estate hereby leased shall become unsuitable or unnecessary for the operation of the said railroads, or any of them, the lessee may sell and dispose of the same by and with the concurrence of the lessor as to the advisability of the sale and the price therefor, to be evidenced by its uniting in the deed or other instrument of conveyance, and the proceeds of sale in every such case shall be applied to the purchase of other property to be mutually agreed upon by the lessor and the lessee, and the title to the same shall be taken in the name of the lessor, and the property purchased shall be treated and used as a part of the leased property."

From the other lease: "The lessor covenants that in case the lessee considers any part of the real or personal property hereby leased to be worn, damaged, or no longer suitable or necessary for its proper purposes, it may sell, alter, change, or replace such property, and the lessor will act with the lessee in any sale thereof, and in executing and delivering such instruments as may be necessary to transfer its title therein to the vendee; provided that such sales shall always be in accordance with the terms of the mortgages at that time existing upon the property; and provided, further, that in the absence of mortgage provisions for such a transaction, the proceeds of any such sale or sales shall be received by the lessee and shall be applied by it to the substitution of property of value at least equal to that sold or shall be expended to otherwise increase the value of the other property hereby leased."

[2] NOTE.—"The lessee hereby accepts the street and interurban street railway and electric light and power plants and systems and the estate and property real and personal hereby demised as the same actually are at the date hereof, and admits that they are in good order and condition, and covenants that it will, during said term, renew, repair, and replace the same, so as to maintain and keep the demised premises in as good order, repair, and condition as the same now are, and in their present state of efficiency, and that it will ex-

Joseph Wilby, of Cincinnati, Ohio, for plaintiff in error Cincinnati St. Ry. Co.

G. H. Warrington and Lawrence Maxwell, both of Cincinnati, Ohio, for other plaintiffs in error.

S. T. McPherson, U. S. Atty., of Cincinnati, Ohio, for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] Several decisions of the Supreme Court instruct us as to the meaning

tend and expand the same with increase of profitable demand for transportation, and electric light and power; that it will from time to time at its own expense (except as otherwise provided in article ninth hereof), make all extensions, additions, alterations, improvements, renewals, and betterments which may be necessary or proper with reference to the premises and property hereby demised and for the use and operation thereof, and will do and perform all other things necessary to make and maintain said plants and systems as first-class modern and efficient street and interurban street railway and electric light and power plants and systems, and that all lands, structures, improvements, betterments, and renewals added to or made upon the demised premises, and all rights, privileges, and franchises acquired by the lessee in connection with the demised premises, shall, upon payment therefor as hereinafter provided, become the property of the lessor, and be treated as part of the demised premises, and be subject to all the terms, conditions, and provisions of this indenture in like manner as if they had been vested in the lessor at the date of this instrument. Provided, however, that upon the expiration of the term of this lease, or if before the expiration of the term thereof this lease be terminated for any cause other than the default of the lessee, then upon such termination, the lessor shall pay to the lessee the actual value at the time of such expiration or termination of all additions, betterments, improvements, and renewals made by the lessee to and of the leased property, except such as shall have been made out of the proceeds of the sale of or insurance on the property now owned by the lessor, or shall have been made in the renewal of or substitution for property existing at the commencement of the term of this lease, and thereafter worn out or destroyed, or shall have been paid for out of funds raised from any bonds of said lessor issued under any of its mortgages, or which may in future be issued for such purpose. *  *  *"

"Ninth. It is hereby agreed between the parties that all uncertified bonds of the lessor which may be in the hands of the trustee under its said mortgage of $6,250,000, hereinbefore mentioned in article second, section 1, subdivision (f), and retained for the purpose of making additions or extensions or betterments to the system of the lessor, or acquiring new property, real or personal, may be used by the lessee for the purposes provided in said mortgages, and to that end, whenever the lessee shall need funds for such purpose, it shall in writing notify the lessor of the amount of money required and the purposes for which it is desired, and such notice shall be signed by the president or vice president of the lessee, attested by its secretary, and sworn to by one of the officers of the lessee, and shall state that the proposed expenditure is proper and necessary for such purposes, whereupon the lessor shall, by resolution of its board of directors, call upon the trustee under its said mortgage, in the manner provided in the mortgage, for the certification and delivery of an amount of bonds sufficient in the judgment of the lessee to provide the amount of money so required, and upon receipt of said bonds, the lessor shall either sell the same and pay the cash proceeds of such sale to the lessee, or deliver said bonds to the lessee to be used or sold by it for making the payments aforesaid as the lessee shall elect."

of the phrase "engaged in business" or "carrying on business," as used in this law. Among them, three deserve special study. In the Park Realty Co. Case (Corporation Tax Cases, 220 U. S. 107, at page 170, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312), it appeared that the corporation was organized, among other purposes, to "manage or lease hotels," and that it was managing and leasing a hotel, and was carrying on such business by continuing to·receive the rents. It was continuing to carry on a business for which it was organized, in which it had been engaged, and which it had not discontinued. It was fulfilling one of the purposes of its organization. If it was not "carrying on business" at the time in question, it never had been. It had not been engaged in any business from which it had retired; and it was not required to pay the tax. In a case simultaneously decided, Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428, a corporation of character very similar to the Park Realty Company had been carrying on an extensive business, but had turned its property and business over to another, assuming only the position of lessor; and, although it was thereafter doing about the same acts in about the same way as the Park Realty Company, it was not subjected to the tax.

Although the Park Realty Company had power to do other business than as a landlord, and the Minneapolis Syndicate had, by amending its charter, shorn itself of such broader powers, this cannot be the true distinction between the cases, because, as Mr. Justice Holmes says, in U. S. v. Emery-Bird-Thayer Co. (April 5, 1915) 237 U. S. 28, 35 Sup. Ct. 499, 59 L. Ed. ——: "The question is rather what the corporation is doing than what it could do." When we compare these two cases, by themselves and as they have been interpreted in the McCoach Case, in U. S. v. Whitridge, 231 U. S. 144, 34 Sup. Ct. 24, 58 L. Ed. 159, and in U. S. v. Emery, etc., Co., we think the true test of distinction must be, as applied to corporations of this class, whether they are continuing the body and substance of the business for which they were organized and in which they set out, or whether they have substantially retired from it and turned it over to another.[3] If the latter appears, then their tax exempt status must be tested by the further query whether they have, during the critical period, done only such acts as are properly and normally incidental to the status of a mere lessor of such property, or whether they have exercised their peculiar corporate franchises outside of and beyond the fair scope of that status. There is helpful analogy in observing an individual. It is not usually hard to decide whether he is still "in business," or has retired; and, if the latter, he does not lose that character because here and there, in the receipt of his income, he does an item of business. When we come to apply this criterion to the circumstances which supposedly distinguish this case from the McCoach Case, we are satisfied that they are insufficient.

[3] The Emery-Bird-Thayer Case seems to hold exempt even a corporation which was organized for the purpose of leasing the real estate which it did lease; but the relations of that company to its predecessor in title and its associate company in active business indicate that the decision is not substantially inconsistent with the test we have assumed.

[2] 1. Of course, buying and selling real estate may be a carrying on of business, but such acts of that nature as were here done cannot be so characterized from the standpoint of the lessor companies. These acts were merely incidental to the business carried on by the lessee companies; they were exceptional in nature and trifling in amount; the lessors did not negotiate the sales of the original nor the purchase of the substituted property. The transaction is merely one where the tenant says to the landlord, "I have arranged an exchange whereby a parcel of leased property which has become useless shall be exchanged for another more desirable parcel," and the landlord says, "I have no objection, and I will sign the papers." When this occurs only to the extent and under the conditions here shown, we cannot think it is a "carrying on of business" by the landlord. As Mr. Justice Holmes said in the Emery-Bird-Thayer Case, "the sale of a part would signify that the [lessor] did not need it." If we resort to comparison with the individual landlord, it could hardly be thought that he had resumed his business activities and neutralized his retirement, merely because he assented to a tenant's desire that a trifling fraction of the leased property should be sold and the proceeds be used by the tenant to improve the main body of the estate. The imposition of the tax cannot be supported on this ground, without abandoning the ordinary definitions, and resorting to the unusual.

The approval of the traffic contract is, if anything, less indicative of the condemnatory "carrying on business" than is the sale of a real estate parcel. The approval might have future importance, but in its present effect it was as harmless as it was unnecessary.

2. Permitting the lessee to take and to sell reserved bonds and unissued stock presents a question of the same class. The case does not involve the sale of either bonds or stock by the lessor company. That might raise a different issue. Properties of the nature of those herein involved necessarily must be enlarged, extended, and otherwise improved at frequent intervals, and a long-time lease must make suitable provision on these points. It is matter of contract whether the business of providing these improved facilities shall be carried on by the lessor or by the lessee. These leases provide that these things shall be done by the lessee; but the lessors had funds on hand in the shape of unissued stock or reserve bonds expressly devoted to this very purpose, and the lessors have merely permitted the lessees to take these funds and use them for the purposes for which the funds were created. Again resorting to the analogy of individuals leasing ordinary buildings, it is as if the tenant desired to make improvements and the landlord permitted this to be done, and either advanced the funds or let the amount be deducted from the rent. This could hardly be thought a resumption of his once abandoned business activity. To this very point, the Circuit Court of Appeals of the Second Circuit, speaking by Judge Rogers (Anderson v. Morris Co., 216 Fed. 83, 91, 132 C. C. A. 327), says:

"The act done was a purely formal act done by the lessor to enable the lessee to raise money on the security of the property for its development and operation in the conduct of the railroad business. In doing it the lessor was not 'carrying on or doing business' within the meaning of the Corporation

Act. The meaning of the words 'carrying on or doing business' and 'engaged in business' must be given their ordinary and natural signification, and, given that signification, the act done is not within the meaning of the statute. The lessor company was not an actively operating concern. Under the terms of this lease the lessor corporation had practically gone out of business and was disqualified from any activity respecting the operation and management of the railroad business which it had been incorporated to carry on. The issuance of the bonds was an act done simply to enable the lessee to enjoy, use, and exercise the property, franchise, and rights which the lessor had previously demised, and did not amount to a resumption of business which the lessee had transferred, or a 'doing of business' in the statutory sense."

And, of the decision just quoted, Judge Putnam says, in the First Circuit (N. Y. Central v. Gill [C. C. A.] 219 Fed. 184, 185):

"This was a sensible interpretation of the statute, and one in harmony with its general terms and purposes."

3. The permitted use of the lessor's name in a lawsuit brought and wholly carried on by the lessee has even less color of carrying on business than has either of the other classes of acts. We concur fully in the opinion of the District Judge on this subject when he said:

"The lessee's attorney was directed to bring a suit in the lessee's name. * * * The attorney, notwithstanding his instruction and in disregard of it, brought the suit in the name of the plaintiff, a fact which did not become known to plaintiff until long afterwards. The lessee is conducting the litigation, has control of it, and is required to bear all the expense of it. Although the plaintiff, after hearing that the suit was instituted in its name, did not forbid its continuance, it does not appear to have taken any part in it, and I do not think, under the circumstances, that the plaintiff, by reason of such litigation, should be held to have engaged in business. The intention to do business was wanting."

Since the case was decided below, not only has the Supreme Court applied the rule of exemption in another instance—the Emery-Bird-Thayer Case—but the very questions involved in this case have been decided by other Circuit Courts of Appeals. The sale of a parcel of leased property and the purchase of other property, title to which was taken in the name of the lessor, but which was to be covered by the lease, were among the things done by the lessor company in the Gill Case, in the First Circuit, but which were held not sufficient to precipitate the tax. The issue of bonds is not only covered by the Gill Case and the Anderson Case, supra, but these cases in this respect are expressly approved by the Circuit Court of Appeals for the Third Circuit, in Lewellyn v. Pittsburgh, etc., R. R. (April 15, 1915) 222 Fed. 177. This last case, as also the Gill Case, held that the lessor company is not to be considered as engaged in business, even though it exercises, for the benefit of the lessee, its franchise right of eminent domain. Obviously, as the greater includes the less, these two decisions cover the case of such an injunction suit as was brought here against the steam railroad, if that suit did not in truth involve the exercise of the right of eminent domain; and, if it did, we should yield to the concurring opinions in the other circuits whatever doubts we had on that subject.

In each case, the judgment is reversed, without costs, and a new trial awarded.