### PUBLIC SERVICE RY. CO. et al. v. HEROLD
(and sixteen other cases).

(Circuit Court of Appeals, Third Circuit. January 21, 1916.)

Nos. 2011–2027.

**1. INTERNAL REVENUE** ☞9—EXCISE TAX ON CORPORATIONS—CORPORATION ENGAGED IN BUSINESS.

Corporation Tax Law (Act Aug. 5, 1909, c. 6) § 38, 36 Stat. 112 (Comp. St. 1913, § 6300), providing that "every corporation * * * organized for profit * * * and engaged in business in any state * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation," imposes such excise tax, not because of every act performed by a corporation under its incidental powers, but upon the privilege of doing and carrying on the business for which the corporation is organized, and when it ceases the conduct of such business by turning it over to be carried on by another, it ceases to

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be subject to the tax so long as it commits no act by which the resumption of its business is to be inferred.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☞9.]

2. INTERNAL REVENUE ☞9—EXCISE TAX ON CORPORATIONS—CORPORATIONS ENGAGED IN BUSINESS.

Various acts of lessor public service corporations considered, and *held* not to constitute the carrying on or doing business within the meaning of the Corporation Tax Law.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☞9.]

3. INTERNAL REVENUE ☞9—EXCISE TAX ON CORPORATIONS—CORPORATIONS "ENGAGED IN BUSINESS."

A corporation authorized by its charter to "manufacture, buy, sell, lease and let power plants and generating stations for the manufacture and distribution of electric current" is not, because a part of its authorized business is the leasing of property, carrying on or doing business within the meaning of the Corporation Tax Law, where by a lease it divested itself of all of its property, and has since merely maintained its entity and collected and disbursed the rents for the demised property.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☞9.

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

4. INTERNAL REVENUE ☞38—EXCISE TAX ON CORPORATIONS—SUITS TO RECOVER TAXES PAID.

Pleadings of plaintiffs in suits brought to recover taxes paid under protest under the Corporation Tax Law construed, and *held* to show that the suits were brought against the collectors officially to enforce the statutory remedy and were therefore subject to the limitations imposed by statute.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ☞38.]

5. INTERNAL REVENUE ☞38—EXCISE TAX ON CORPORATIONS—SUIT TO RECOVER TAX PAID—LIMITATION.

Corporation Tax Law (Act Aug. 5, 1909, c. 6) § 38, 36 Stat. 112 (Comp. St. 1913, § 6307), extends all laws relating to the remission or refund of internal revenue taxes so far as applicable to the tax imposed thereby, and Rev. St. §§ 3220, 3226–3228 (Comp. St. 1913, §§ 5944, 5949–5951), thereby made applicable, provide that no suit for the recovery of such taxes shall be maintained until an appeal has been taken to the Commissioner of Internal Revenue and acted on by him, nor unless brought within two years after the cause of action accrued, and that all claims for refund must be presented to the Commissioner within two years. *Held* that, where no claim under said act is so presented within the two years, no suit can be maintained thereon.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ☞38.]

In Error to the District Court of the United States for the District of New Jersey; William H. Hunt, Judge.

Actions by the Public Service Railway Company and the Consolidated Traction Company, by the Public Service Railway Company and the Rapid Transit Street Railway Company, by the Public Service Gas Company and the Newark Consolidated Gas Company, and by the Public Service Electric Company and the United Electric Company of New Jersey, all against Herman C. H. Herold; by the

Public Service Railway Company and the Camden Horse Railroad Company and by the Public Service Railway Company and the Camden & Suburban Railway Company against Isaac Moffett; by the Public Service Electric Company and the South Jersey Gas, Electric & Traction Company and by the Public Service Corporation of New Jersey and South Jersey Gas Electric & Traction Company against Herman C. H. Herold; by the Public Service Corporation of New Jersey and the South Jersey Gas, Electric & Traction Company against Isaac Moffett; and by the Public Service Railway Company and the Bergen Turnpike Company, by the Public Service Railway Company and the New Jersey & Hudson River Railway & Ferry Company, by the Public Service Corporation of New Jersey and the Gas & Electric Company of Bergen County, by the Public Service Electric Company and the Somerset, Union & Middlesex Lighting Company, by the Public Service Corporation of New Jersey and the Somerset, Union & Middlesex Lighting Company, by the Public Service Gas Company and the Hudson County Gas Company, by the Public Service Corporation of New Jersey and the Paterson & Passaic Gas & Electric Company, and by the Public Service Gas Company and Essex & Hudson Gas Company, all against Herman C. H. Herold. From the judgments, plaintiffs bring error, and in two cases defendant also brings error. Certain of the judgments affirmed, and others reversed. See, also (D. C.) 219 Fed. 301, and (D. C.) 227 Fed. 486, 490, 491, and 494.

Frank Bergen, of Newark, N. J., for plaintiffs in error.

J. Warren Davis, U. S. Atty., and J. L. Bodine, Asst. U. S. Atty., both of Trenton, N. J., for defendant in error Herold.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The plaintiffs in these cases are public utility corporations organized under the laws of the State of New Jersey. They are lessors and lessees of the property of such corporations. The defendants were Collectors of Internal Revenue for the United States in the First and Fifth Districts of New Jersey respectively.

This litigation, including seventeen cases, numbered in this court 2011 to 2027 inclusive, grew out of the collection of taxes for the years 1909, 1910, 1911 and 1912, assessed against the lessor plaintiffs under section 38 of the Act of Congress, approved August 5, 1909 (36 Stat. 112, U. S. Comp. Stat. 1913, §§ 6300–6307), being a portion of the tariff act of that year and commonly called the Corporation Tax Law. The tax under this law is imposed upon the privilege of carrying on or doing business in a corporate capacity. The lessor plaintiffs contend that they were not subject to the tax, because prior to the year 1909 they had leased their property and franchises to the lessee plaintiffs, and had not been engaged in business within the meaning of the act since the leases were made.

The taxes were paid under protest, and after claims for their refund had been made and rejected, these suits were brought to recover the amounts paid. The lessees were joined with their respective lessors

as parties plaintiff, because the money paid was advanced by the lessees under terms of the leases which imposed upon them the payment of taxes.

There are two questions involved in these cases: (1) Were the lessor plaintiffs engaged in business within the meaning of the act, and therefore subject to the tax; and (2) Is recovery of the amounts paid for the years 1909 and 1910 barred by the federal statute of limitations, being sections 3220, 3226, 3227 and 3228 of the Revised Statutes of the United States? These two issues are raised in the respective cases by appropriate pleadings. The facts are established by a special verdict in each case. (D. C.) 219 Fed. 301; (D. C.) 227 Fed. 486; (D. C.) 227 Fed. 490; (D. C.) 227 Fed. 491; (D. C.) 227 Fed. 494.

In order to avoid confusion from the multiplicity of parties, the cases will be considered by their numbers rather than by their titles. In cases Nos. 2017, 2018, 2021 and 2023, the first question alone is involved. In Nos. 2011, 2012, 2019, 2025, 2026 and 2027, only the second question is involved. In the remaining cases, Nos. 2013, 2014, 2015, 2016, 2020, 2022 and 2024, both questions are raised upon writs of error taken by one party or the other, that is, in this group of cases, the defendants allege that the lessor plaintiffs were engaged in business taxable under the act during the years 1909 to 1912 inclusive, and that recovery of payments for the years 1909 and 1910 is barred by the statute of limitations. Excepting in Nos. 2013 and 2020, the court gave judgment to the defendants in these cases for all payments made in the four years. The finding of the court in Nos. 2013 and 2020, that the lessor corporations were not doing business within the meaning of the act, is challenged by the defendant's writs of error.

The first question, whether the lessor corporations were doing business in a manner to make them liable to the corporation tax, had its rise in leases made between the different groups of lessor and lessee plaintiffs. These leases were similar in form to those commonly entered into by utility corporations when one surrenders to another for a long term its property and franchises, and reserves to itself only its non-delegable powers or franchises, which, under covenants, it undertakes to exercise for the benefit of the lessee.

The acts performed by the lessor corporations under their reserved powers, other than the maintenance of their corporate existence, as they appear in the special verdicts, were done in pursuance of the terms of leases, made before the enactment of the Corporation Tax Law, and were performed at the direction of the lessee corporations. They may be summarized as follows:

In No. 2013, the lessor (1) authorized the voting of the stock of another company owned by it in favor of a proposed lease by that company; (2) authorized the voting of stock in another company for the election of directors; (3) extended pipe lines for the use of the lessee under the terms of the lease.

In No. 2017 (227 Fed. 486), the lessor (1) sold certain stocks and bonds, and directed its trustee under a mortgage to pay the proceeds to the lessee; (2) applied to the Board of Public Utility Commissioners for leave to issue bonds to repay lessee for improvements; (3) direct-

ed the trustee under the mortgage to pay to the lessee insurance money received from fire losses, for the restoration of the property.

In No. 2018, the lessor (1) issued bonds to pay the lessee for expenditures made on the demised property; (2) rectified a mistake respecting the deposit of certain shares of stock; .(3) authorized the cancellation of an option.

In No. 2020, the lessee (1) maintained its corporate organization; (2) received and distributed rents.

In No. 2021 (227 Fed. 490), the lessor (1) authorized the purchase of property; (2) applied for a franchise to lay tracks; (3) renewed leases; (4) called for the return of old certificates of stock of merged companies for cancellation.

In No. 2023, the lessor (1) requested the trustee of a mortgage of underlying property to deliver bonds for cancellation; (2) delivered for cancellation bonds that had been paid; (3) delivered its own bonds for certain shares of·stock under a consolidation antedating the lease.

In No. 2015 (227 Fed. 494), the lessor (1) provided for an issue of bonds to refund maturing bonds; (2) conveyed certain real estate covered by the lease; (3) petitioned for and accepted an ordinance for additional railway tracks.

In No. 2016, the lessor performed the same three acts as in No. 2015.

In No. 2022 and No. 2024, the lessor's acts were similar to those done in one or several of the preceding cases.

In No. 2014 (227 Fed. 491), the lessor, under its corporate powers to engage in the business of leasing property, leased all its property and franchises to the Public Service Corporation of New Jersey.

These several corporate activities (excepting those in Nos. 2013 and 2020), were held by the trial court to constitute doing business within the meaning of the Corporation Tax Law. This law provides:

"That every corporation * * * organized for profit * * * and *engaged in business* in any state * * * shall be subject to pay annually a special excise tax with respect to the *carrying on or doing* business by such corporation. * * *" Comp. St. 1913, § 6300.

It has been repeatedly held by the Supreme Court of the United States, Anderson v. The Forty-Two Broadway Co., 239 U. S. 69, 36 Sup. Ct. 17, 60 L. Ed. ——; Stratton's Independence v. Howbert, 231 U. S. 399, 414, 34 Sup. Ct. 136, 58 L. Ed. 285; McCoach v. Minehill Ry. Co., 228 U. S. 295, 306, 33 Sup. Ct. 419, 57 L. Ed. 842, that the tax thus imposed is not an income tax, but is an exise upon the conduct of business in a corporate capacity. The character of corporate business intended to be taxed is described by the law only by the general expression "carrying on or doing business." From the beginning, therefore, the courts have been called upon to construe the law and to determine what corporate acts constitute doing business within its meaning.

It was recognized at once that certain corporate acts concern only the maintenance of corporate existence, and have no relation to the conduct of the business for which a corporation is organized, while others are done and performed solely in furtherance of that business

without relation to the maintenance of the corporate entity. It was conceded, that with respect to the former, the law does, not impose a tax, and with respect to the latter, it does. Between the se extremes appeared corporate acts partaking of the nature of busir less transactions, but pursued under circumstances that indicated th e performance of contractual undertakings rather than the conduct of corporate business. Such transactions were presented for adjudication in a number of cases pending but not decided at the time judgments were entered in the cases under review. These were, therefore, not available to the trial court in aid of its conclusions. These decisions rule the cases under review, not merely because of the similarity in fact and in principle to the issues here involved, but because of the breadth of construction which the courts have given the statute.

[1] The substance of this construction is, that the statute imposes an excise, not because of every act performed by a corporation under its incidental powers, but upon the privilege of doing and carrying on the business for which the corporation is organized, and when the corporation ceases the conduct of such business by turning it over to be carried on by another, it ceases to be subject to the tax so long as it commits no act by which the resumption of its business is to be inferred. Anderson v. Morris & Essex R. R. Co., 216 Fed. 83, 132 C. C. A. 327 (C. C. A. 1st); N. Y. C. & H. R. R. Co. v. Gill, 219 Fed. 184, 134 C. C. A. 558 (C. C. A. 2nd); Lewellyn v. Pittsburgh, B. & L. E. R. Co., 222 Fed. 177, 137 C. C. A. 617 (C. C. A. 3rd); Traction Companies v. Collectors, 223 Fed. 984, —— C. C. A. —— (C. C. A. 6th); United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 Sup. Ct. 499, 59 L. Ed. 825; McCoach v. Minehill & Schuylkill Haven R. R. Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842. It has thus been held that a railroad company, whose business is the transportation of passengers and freight, ceases to be engaged in the business for which it was organized when it leases and surrenders its entire property to another railroad company to be exclusively used and operated by it. McCoach v. Minehill R. R. Co., supra; Lewellyn v. Pittsburgh, B. & L. E. R. Co., supra. It has also been held that such a corporation does not resume the business for which it was organized, when by subsequent acts, it elects directors and officers for the maintenance of its corporate existence, McCoach v. Minehill R. R. Co., supra; collects and distributes rents reserved by a lease, McCoach v. Minehill R. R. Co., supra; Corporation Tax Cases, 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389; collects income from securities, and reinvests the same, McCoach v. Minehill R. R. Co., supra; issues bonds to meet the cost of acquisition and construction of property to be added to demised premises, Anderson v. Morris & Essex R. R. Co., supra; N. Y. C. & H. R. R. Co. v. Gill, supra; acquires real estate by purchase or the exercise of the power of eminent domain for the use of a lessee, Lewellyn v. Pittsburgh, B. & L. E. R. Co., supra; N. Y. C. & H. R. R. Co. v. Gill, supra; sells real estate and reinvests the proceeds in other property subject to a lease, Traction Companies v. Collectors, supra; issues treasury stock previously authorized in payment for improvements made by a lessee

to demised premises, Anderson v. Morris & Essex R. R. Co., supra; Traction Companies v. Collectors, supra.

[2] A review of the reasons upon which these decisions are based would add nothing to the subject. It is therefore sufficient to say we are of opinion that the acts found by the special verdicts in the cases under review to have been done and performed by the lessor corporations were not done or performed by them in the conduct of the body or substance of the business for which they were organized and from which they had retired when they turned over their property to their lessees, but were corporate acts performed under the incidental powers of the corporations pursuant to the terms of contracts into which they had entered.

[3] This view was not seriously resisted by the defendants in any of the cases, excepting in Nos. 2013, 2020 and 2014. In the latter case, the lessor corporation had very broad powers, among which was the power "To manufacture, buy, sell, *lease* and let, power plants and generating stations for the manufacture and distribution of electric current." On July 1, 1907, the lessor corporation leased its property, and thereafter the lessee conducted the business of manufacturing and distributing electric current. The learned trial judge held that by leasing a power plant under its corporate authority to engage in the business of leasing such property, the lessor corporation was carrying on a business within the definition of its charter powers. Applying to this case the test suggested by the Supreme Court in United States v. Emery-Bird-Thayer Realty Company, 237 U. S. 29, 35 Sup. Ct. 499, 59 L. Ed. 825, we are not inclined to agree with this conclusion. In that case the court said:

"The question is rather what the corporation is doing than what it could do."

Under its powers, this corporation could have engaged in the business of building and leasing power plants, and in the prosecution of that business would have been subject to taxation under the Corporation Tax Law. What it did was to divest itself by lease of its entire corporate property and corporate powers, except its power to exist, just as the other lessor corporations did under appropriate powers. What it was doing when the taxes in dispute were assessed against it, was the maintenance of its corporate entity and the collection and distribution of rents received for its demised property.

We are of opinion that the trial court erred in holding in this and other cases, that the lessor plaintiffs were doing business within the meaning of the act, and were therefore subject to the corporation tax, but that it did not err in holding in Nos. 2013 and 2020, that the lessor plaintiffs were not doing business within the meaning of the act.

The second question in these cases, whether recovery of the amounts paid for the years 1909 and 1910 is barred by the federal statute of limitations, depends upon the nature of the actions and the character in which the defendants are sued. 219 Fed. 301.

In the cases grouped in the beginning of this opinion, in which the second question appears, the plaintiffs sought to recover for taxes paid for the years 1909 and 1910, as well as in some of the cases for

taxes paid for the years 1911 and 1912. The circumstances connected with the payment of the taxes for the years 1909 and 1910, and the institution of suits to recover the same, are these: The taxes were assessed under the Corporation Tax Law of 1909 and were paid under protest. More than two years after the dates of payment, the plaintiffs appealed to the Commissioner of Internal Revenue for their abatement or refund. The appeals were rejected on the ground, among others, that the appeals were not filed within two years from the time the taxes were paid, whereupon these suits were instituted.

The statutes limiting the period within which the government subjects itself to the judgments of the courts for the recovery of revenues erroneously or illegally collected, are these:

The Corporation Tax Law of 1909 (section 38) provides:

"That all laws relating to the collection, remission, and refund of internal revenue taxes, so far as applicable to and not inconsistent with the provisions of this section, are hereby extended and made applicable to the tax imposed by this section." Comp. St. 1913, § 6307.

The particular statutes contemplated are sections 3220, 3226, 3227 and 3228 of the Revised Statutes of the United States, the provisions of which, in so far as they affect the issues of these cases, are as follows:

"Sec. 3220. The Commissioner of Internal Revenue * * * is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected."

"Sec. 3226. No suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected * * * until appeal shall have been duly made to the commissioner of internal revenue * * * and a decision of the commissioner has been had therein.

"Sec. 3227. No suit or proceeding for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected * * * shall be maintained in any court, unless the same is brought within two years next after the cause of action accrued.

"Sec. 3228. All claims for the refunding of any internal tax alleged to have been erroneously or illegally assessed or collected * * * must be presented to the commissioner of internal revenue within two years next after the cause of action accrued." Comp. St. 1913, §§ 5944, 5949–5951.

The plaintiffs maintain that they are not subject to the two year limitation of these statutes, for the reason that they have not pursued the remedy prescribed by the statutes, but have followed another remedy afforded by law. In other words, they claim that they have not sued the collectors in their official capacity under a federal law which limits their right of action to two years, but have sued the collectors in their personal or individual capacity under a state law, which extends their right of action to four years.

This distinction is based upon the contention, that in collecting taxes from corporations for the privilege of doing business when in fact they were not doing business within the meaning of the act, the defendant collectors acted without warrant of law and committed torts for which they are personally liable. This contention is based, first, upon the legal proposition that a public official who attempts to enforce an unconstitutional act of Congress or of a State legislature, and thereby invades personal or property rights, is liable personally

for the resulting damages, Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Virginia Coupon Cases, 114 U. S. 270, 297, 5 Sup. Ct. 903, 962, 29 L. Ed. 185; De Lima v. Bidwell, 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041; Osborn v. United States Bank, 9 Wheat. 738, 6 L. Ed. 204; United States v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171, and second, upon the deduction, that a public official who attempts to enforce a valid act of Congress or of a State legislature against a party to whom the act does not apply, and thereby invades personal or property rights, is likewise liable personally for damages. Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; Tindal v. Wesley, 167 U. S. 222, 17 Sup. Ct. 770, 42 L. Ed. 137; Cunningham v. Macon R. R., 109 U. S. 446, 452, 3 Sup. Ct. 292, 609, 27 L. Ed. 992.

Opposed to these contentions the defendants maintain, that the remedy provided by the statute for the recovery of taxes erroneously or illegally collected, is an exclusive remedy and no other can be substituted for it. Snyder v. Marks, 109 U. S. 189, 193, 3 Sup. Ct. 157, 27 L. Ed. 901; De Bary v. Dunne (C. C.) 162 Fed. 961; Cheatham v. United States, 92 U. S. 85, 88, 89, 23 L. Ed. 561. Therefore, if the defendants are sued officially, the plaintiffs are limited by the federal two year statute of limitation, and if sued personally, they are without right to recover at all.

[4] Interesting as this question of law may be, we are clearly of the opinion that it has not been raised and therefore cannot be decided under the pleadings in these cases. Whether the statutory remedy for the recovery of taxes erroneously or illegally collected is or is not an exclusive remedy, it nevertheless is one remedy. Whether there was open to the plaintiffs another which they might have pursued against the collectors personally, is unimportant in face of the fact that they did not select such a remedy, but, their protestations to the contrary notwithstanding, elected to adopt and pursue the remedy provided by the statute. It is true that the names of the defendants appear in the titles of the suits without words descriptive of their official positions, and so far as the titles disclose, the defendants were sued personally. But the form of an action and the rights and liabilities of parties are not controlled by the title of the suit. They are determined by the disclosures of the pleadings. And so the character in which a party sues or is sued is determined from the body of the pleading and not from the caption of the suit. We must therefore look to the complaints in these cases to find the nature of the actions and the character in which the defendants were sued.

Similar complaints, mutatis mutandis, were filed in the seventeen cases. One of the complaints, with matters unimportant to the present consideration omitted, is excerpted in the margin.[1]

---

[1] No. 2011.

Plaintiffs, Public Service Railway Company and Consolidated Traction Company, corporations and bodies politic of the State of New Jersey, say:
"1. Consolidated Traction Company * * * leased all of its property and franchises, except its franchises to be a corporation, to the North Jersey

These complaints show that the plaintiffs pleaded the statute with the particularity and nicety of common law pleading by stating the facts which brought their cases within it, and that they went even further and counted upon the statute by making express reference to it, and concluded with declarations that their actions accrued upon the statutory acts of the Commissioner of Internal Revenue in refusing to allow their appeals and to refund the taxes. And in this regard it may be noted that if the defendants were sued in their personal capacity, the actions against them would have accrued to the plaintiffs when the torts were committed, without awaiting the subsequent conduct of the Commissioner of Internal Revenue, and the plaintiffs in their pleadings would have so declared. On the contrary it manifestly appears from a reading of the complaints, that in preparing their grounds of action, as well as in declaring upon the actions, the plaintiffs conformed in detail to the acts and the conditions prescribed by the statute as prerequisites to the remedy it affords.

Street Railway Company * * * for the term of 999 years; * * * since which time *it has not done or carried on any business* whatsoever except the receipt of the rental under said lease and the distribution thereof among its stockholders.

"2. By virtue of a merger and consolidation agreement, Public Service Railway Company was formed by said North Jersey Street Railway Company and others, and thereby all of the said leasehold property became vested in Public Service Railway Company.

"3. Defendant was * * * *Collector of Internal Revenue for the United States in the Fifth District of New Jersey* * * * *and as such duly commissioned under the laws of the United States.*

"4. The Commissioner of Internal Revenue of the United States, claiming to act under and by virtue of the provisions of *an act of Congress, approved August 5, 1909,* assessed a special excise tax against the plaintiff Consolidated Traction Company, *for excise taxes for the year ending December 31, 1909,* for the sum of $6,225, and that notwithstanding the fact that under and by virtue of the aforesaid lease, said company *was not doing business within the meaning of the said act,* nor could it do the same, but was simply maintaining its corporate existence and collecting and distributing to its stockholders the rental paid to it under said lease, and said plaintiff, the said Consolidated Traction Company, *was not liable under the law for the payment of said taxes.* Nevertheless, *the said defendant* required and compelled the payment of said sum of $6,225, in spite of the *protests* of the plaintiffs, and thereby the plaintiffs, Public Service Railway Company, as lessee in possession and operation of said leasehold property under the terms of said lease (which required it to pay all taxes against said Consolidated Traction Company or the leasehold estate) was thereupon wrongfully, illegally and improperly compelled by the defendant to pay the said sum of $6,225, which sum the plaintiff Public Service Railway Company, under protest that said company was not lawfully liable for said taxes, did pay on June 10, 1910, to the said defendant.

"5. (A claim with similar averments covering taxes assessed for the year ending December 31, 1910, and collected and paid on June 29, 1911.)

"6. Plaintiffs *made claim for a refund* of the said several sums so paid to the said defendant as aforesaid *to the Commissioner of Internal Revenue, on the ground* that the same were severally *illegally, improperly* and *wrongfully* assessed and collected, *by several applications in writing,* which applications *are now on file* with the Commissioner of Internal Revenue and *to which plaintiffs pray leave to refer,* which claim *was refused by said Commissioner of Internal Revenue* on November 18, 1913; *whereby on that date an action accrued therefor to the plaintiffs.*

"7. By reason of said payments * * * Public Service Railway Company demands as damages, the sums so paid as aforesaid."

[5] Holding, as we do, that the plaintiffs declared upon and seek to recover under the statute, it follows that they are subject to the limitation prescribed by the statute. This limitation provides that an appeal for a refund shall be made within two years after payment. With respect to this provision, the Supreme Court in Kings County Savings Institution v. Blair, 116 U. S. 200, 6 Sup. Ct. 353, 29 L. Ed. 657, held:

"A suit cannot be maintained against a collector of internal revenue to recover back taxes alleged to have been illegally exacted, when the tax payer has failed within two years next after the cause of action accrued to present to the Commissioner of Internal Revenue his claim for the refunding in the manner pointed out by law."

In speaking for the court, Mr. Justice Woods said:

"In our opinion no suit can be maintained for taxes illegally collected unless a claim therefor has been made within the time prescribed by the law. When the law says the claim must be presented within two years, the implication is that, unless so presented, the right to demand the repayment of the tax is lost, and the Commissioner has no authority to refund it, and, of course, the right of suit is gone. We regard the presentation of the claims to the Commissioner of Internal Revenue for the refunding of a tax alleged to have been illegally exacted as a condition on which alone the Government consents to litigate the lawfulness of the original tax. It is clearly not the intent of the statute to allow the collector to be sued unless the taxpayer has first applied for relief to the Commissioner within the time and in the manner pointed out by law and relief has been denied him. Cheatham v. United States, 92 U. S. 85 [23 L. Ed. 561]; Railroad Co. v. United States, 101 U. S. 543 [25 L. Ed. 1068]; Arnson v. Murphy, 115 U. S. 579 [6 Sup. Ct. 185, 29 L. Ed. 491]."

We are of opinion that the learned trial judge committed no error in ruling in the cases in which the question arose that recovery by the plaintiffs for the taxes paid for the years 1909 and 1910 is barred by the federal statute of limitations.

In Nos. 2017, 2018, 2021 and 2023, the judgments of the court below are reversed. In Nos. 2011, 2012, 2013, 2019, 2020, 2025, 2026 and 2027, the judgments below are affirmed. In Nos. 2014, 2015, 2016, 2022 and 2024, the judgments below are reversed, and new trials are directed in conformity with this opinion.

McPHERSON, Circuit Judge, did not participate in the consideration and decision of these cases.